12

**KANSAS–NEBRASKA NATURAL GAS COMPANY, INC., Plaintiff,**

v.

**MARATHON OIL COMPANY and Double M Oil Company, Defendants.**

**No. CV82–L–564.**

United States District Court, D. Nebraska.

April 28, 1983.

On Motion for Sanctions March 14, 1984.

On Motion to Compel Answers March 30, 1984.

On Motion to Compel Production Sept. 20, 1984.

On Motion to Leave to Amend Jan. 10, 1985.

On Applications for Fees and Expenses June 20, 1985.

**14**

Marti, Dalton, Bruckner, O'Gara & Keating, W. Scott Davis, Morris J. Bruckner, Lincoln, Neb., Vinson & Elkins, James W. McCartney, John B. Holstead, B. Lee Ware, Penelope Elizabeth Nicholson, Houston, Tex., Eugene A. Lang, Jr., Kansas-Nebraska Natural Gas Co., Inc., Lakewood, Colo., for plaintiff.

Patrick G. Pitet, Marathon Oil Co., Houston, Tex., Cline, Williams, Wright, Johnson & Oldfather, Fredric H. Kauffman, Terry R. Wittler, Lincoln, Neb., Gorsuch, Kirges, Campbell, Walker & Grover, John S. Pfeiffer, Charles W. McDermott, Steven P. Bailey, E. Hil Margolin, Denver, Colo., Morris E. Gray, Marathon Oil Co., Casper, Wyo., for Marathon Oil Co.

John Peetz, P.C., Jack Peetz, Sidney, Neb., for Double M Oil Co.

Vestecka, Tegtmeier & Buethe, Lincoln, Neb., for Leona Bertels, Rollins E. Blome and Wilma Joyce Blome.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, Steven C. Smith, Donald J. Tedesco, Sidney, Neb., for W.R. Ayers, J.B. Baker, Patrick K. Dalton, Henry Elias, Robert W. Johnston, Carol J. Mason, Lyle W. Reynolds, Bryan Salstrom, Kenneth C. Shoopman, Clarence Surber and Clare Surber.

Jack R. Knicely, Sidney, Neb., for Dr. Marvin C. Sherrerd and Phyllis M. Sherrerd.

Barlow, Johnson, DeMars & Flodman, Robert A. Barlow, Wm. E. Olson and James A. Eske, Lincoln, Neb., for Double M Oil Co., W.R. Ayers, J.B. Baker, A.R. Bumgardner, C.W. Bumgardner, Patrick K. Dalton, Henry Elias, George P. Elwood, Lois M. Elwood, Carl E. Johnson, Pauline Johnson, Robert W. Johnston, John A. Mason, Carol J. Mason, Lyle W. Reynolds, Bryan Salstrom, Dr. Marvin C. Sherrerd, Phyllis M. Sherrerd, Kenneth C. Shoopman, Clarence Surber and Clare Surber.

Donald J. Tedesco, Sidney, Neb., for W.R. Ayers, J.B. Baker, Patrick K. Dalton, Henry Elias, John A. Mason and Carol J. Mason.

Heaton & Heaton, P.J. Heaton, Jr., Sidney, Neb., for Clarence Surber and Clare Surber.

Karen Sue Johnson, Littleton, Colo., Healey, Brown, Wieland, Kluender, McCord, Atwood & Jacobs, Susan Jacobs, Lincoln, Neb., for A.R. Bumgardner, C.W. Bumgardner, George P. Elwood, Lois M. Elwood, Carl E. Johnson, Pauline Johnson and Lyle W. Reynolds.

## MEMORANDUM AND ORDER

DAVID L. PIESTER, United States Magistrate.

Pending in this matter is the plaintiff's motion to compel answers to deposition questions. At issue are many questions propounded to two deponents, both employees of the defendant Marathon Oil Company. In all, some 62 questions have been certified for ruling by the court. The deponent Sherrill Motsch is a geologist for Marathon, and the deponent Lance J. Galvin is a reservoir engineer for Marathon. I will not discuss each individual question, but generally speaking, the questions certified for ruling concern the activities of the deponents since the filing of this lawsuit, concerning such matters as meetings with other Marathon personnel and outside experts, studies undertaken, and conclusions or opinions reached with respect to the possible migration of natural gas which is the subject of this action.

The defendant Marathon objects to plaintiff's questioning in these areas on three grounds. First, Marathon claims that these two deponents may be named as experts who will testify at trial, and since the court's progression order in this case does not require Marathon to disclose its trial experts until July 1, 1983[1] it is improper and a violation of the progression order for the plaintiff to seek to discover

1. *See* order on preliminary pretrial conference, filing 20, paragraph 11.

these experts' opinions and studies prior to that date. Second, Marathon claims that even if the two deponents are not named as experts for purposes of trial, they are experts "retained or specially employed" for purposes of this litigation, and therefore are protected from discovery by the provisions of Rule 26(b)(4)(B), Fed.R.Civ.P. Third, Marathon contends that, to the extent that neither of the above is applicable, the activities and opinions of these two deponents are part of Marathon's attorneys' "work product" and not subject to discovery except as provided in the provisions of Rule 26(b)(3). To the extent that Marathon relies on the first argument set forth above, it is without merit. The progression order clearly directs the parties to disclose the identities of their trial experts, together with the other information described in Rule 26(b)(4)(A)(i) "as soon as practicable but not later than July 1, 1983." In view of the fact that these two deponents have not been identified as trial experts, they are not protected by that provision of the Federal Rules, nor by the court's progression order in this matter.

■ Defendant's second contention is more troublesome, presenting the question of whether "in-house experts" can be "retained or specially employed" by a party so as to protect their actions and conclusions from discovery under Rule 26(b)(4)(B). The Advisory Committee notes state with respect to this subdivision:

> ... It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.
>
> .      .      .      .      .
>
> Subdivision (b)(4)(B) deals with an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial (thus excluding an expert who is simply a general employee of the party not specially employed on the case), but who is not expected to be called as a witness. Under its provisions, a party may discover facts known or opinions held by such an expert only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Notes of Advisory Committee on Rules, 28 U.S.C., fol. Rule 26, Fed.R.Civ.P.

The deposition of Sherrill Motsch discloses that he has been employed as a geologist for Marathon for some 32 years, and that in November 1982 he was instructed by a Dale Caddy that he would be responsible for geological interpretations and understanding of the West Engelland-Huntsman Field, the area involved in this litigation. (Motsch deposition, 30:6–24). Although counsel for Marathon repeatedly asserted during the course of the deposition that Mr. Motsch had been employed for purposes of this litigation, I am unable to find specific testimony which so limits his responsibilities to the issues raised in the litigation.

Mr. Galvin's deposition discloses that he has been employed by Marathon since February 1981 as an engineer, and was given responsibility for reservoir engineering in April 1982 with an area of responsibility which includes all of Nebraska. (Galvin deposition 4:16–5:15). Mr. Galvin stated that his responsibility was "to maintain the development of the reserves in the fields of [my] responsibility" and that that "covers a broad spectrum of everything from, basically, the economic continued development of any reserves that are in the ground and can be produced." (8:3–15). Again, even though counsel asserted during the deposition that Galvin's responsibilities were geared toward the issues of this litigation, the actual testimony does not support such a limitation of his responsibilities.

A similar question was presented in the case of *Virginia Electric and Power Co. v. Sun Ship Building and Dry Dock Co.*, 68 F.R.D. 397 (E.D.Va.1975), upon which plaintiff relies. In that case the court was

faced with a motion to compel production of documents which were claimed by the defendant to be protected both by the work product rule and by Rule 26(b)(4)(B), because they were the work of "in-house experts." In a lengthy and detailed analysis of the question, Judge Warriner concluded that the "in-house expert" should be treated for discovery purposes as an ordinary witness whose opinion, based on facts gained in the course of his employment, is open to discovery under Rule 26(b)(1). *Id.* at 408.

Defendant Marathon, however, relies upon *Seiffer v. Topsy's International, Inc.,* 69 F.R.D. 69 (D.Kansas 1975), in which the court was faced with a motion to prevent a deposition of a partner in Touche, Ross & Co., one of the defendants. Finding that the witness was "specially employed" within that term's meaning in Rule 26(b)(4)(B), the court granted the defendant's motion for a protective order, basing its finding on four separate facts: first, that the witness was not "simply a general employee" of the firm, but was requested by the firm's attorneys to assist in the litigation; second, that he had no involvement in the audits which led to the litigation; third, that he reviewed the audits which were the subject of the litigation and gave reports directly to the firm's counsel; and fourth, that he would not be called as a witness at the trial.

It may be that distinctions between the above two cases would allow a reconciliation of the legal premises stated therein, and hence, guidance in the application of this provision of the rules to the present litigation; it seems to me, however, that an attempt to do so would be strained indeed. Rather, from my analysis of these cases and the other materials submitted by counsel, together with the depositions themselves, I conclude that the analysis of the *Virginia* case is more appropriately applied to the circumstances of this litigation.

As noted, neither of the deponents indicated that they were working "for" the defendant's attorneys; rather, they each described the scope of their responsibilities as including assistance to the attorneys but did not so limit their responsibilities. In addition, while it may be said that they have not been "actors" in the occurrences leading up to the filing of this case, the plaintiff's complaint does pray for injunctive relief and alleges ongoing matters, which could involve these deponents. Third, I am persuaded that the use of the terms "retained or specially employed" implies something more than simply the assignment of a current employee to a particular problem raised by current litigation, as the defendant Marathon appears to have done here. Because of these factors, I conclude that these deponents are not protected from deposition discovery by the provisions of Rule 26(b)(4)(B).

The defendant also claims that these deponents' work and opinions are protected by the "work product rule," Rule 26(b)(3). In this regard, it should be noted that, as with my earlier observations, although the attorneys attending the depositions for the defendant made the statements that the deponents were investigating matters and conducting studies at the attorneys' request, the deponents themselves did not so testify, and there is nothing before me upon which I can base such a finding. Even if there were demonstrated a closer relationship between these deponents and the defendant's trial attorneys, however, I have doubts whether the deponent's work, studies, and opinions, would classify as "documents and tangible things" or the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3). From the facts before me, I cannot conclude that the defendant has met its burden of demonstrating that the work product rule applies in this instance.

In accordance with the foregoing, the motion to compel will be granted. I do find, however, that the defendant's resistence to the motion was "substantially justified," and therefore I will not award the plaintiff its expenses in obtaining this order. Accordingly,

IT IS ORDERED:

1. The plaintiff's motion to compel, filing 33, is granted.

2. Each party shall bear its own expenses with respect to this discovery matter.

## ON MOTION FOR SANCTIONS

The plaintiff has filed a motion for the imposition of sanctions, pursuant to the provisions of Rule 37(d), Fed.R.Civ.P., stemming from the defendant Marathon's destruction of certain documents claimed to be relevant to the issues pending before the court, at a time after such documents were requested to be produced pursuant to Rule 34, Fed.R.Civ.P.

Both sides have submitted extensive documentation in support of their positions. However, these documents have not been filed with the clerk, so as to be considered evidence in support of and in opposition to the motion. Much of the submitted material is either affidavit or deposition testimony, but some items are exhibits which have not been incorporated into the deposition testimony or otherwise authenticated. This matter has been called to counsels' attention in the past. I will, in this instance, direct that the clerk file both volumes entitled "attachments" to the parties' briefs; however, I will not do so in any future motions and I will consider for this motion only those items which constitute either affidavit or deposition testimony, or which are properly incorporated into the deposition testimony.

The evidence, though voluminous, is not strong. In support of the motion, for example, there is no evidence giving a firm description of the documents destroyed; no evidence of which of the destroyed documents, if any, have no duplicates available for counsel to use; no evidence tending to show that any of the destroyed documents were in any way tampered with or different from those copies which have been made available to counsel from other sources. Most importantly, there is no evidence tending to show that the destruction of these documents was in any way willful, or intended to thwart the plaintiff's discovery efforts and preparation for trial in this case.

■ While "willfulness" is not a prerequisite to the imposition of sanctions, *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), it remains a factor to be considered in determining what sanctions, if any, should be imposed.

The defendants point out that the Eighth Circuit Court of Appeals has required, in similar circumstances, that prior to the imposition of sanctions under Rule 37(d), the court first give the delinquent party an opportunity to make amends by way of issuing an order compelling discovery pursuant to Rule 37(a). *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir. 1975). In *Fox*, the situation was more egregious than in the present case, and the context was principally that of a failure to respond to interrogatories, although the offending party had also destroyed documents. After stating that sanctions under Rule 37(d) were inappropriate, absent a total failure to answer the interrogatories, the court continued:

> Similarly, a Rule 37(d) sanction is improper where a written response to a request to inspect documents is made but is not satisfactory [citations omitted]. In other words, Rule 37(d) sanctions are proper only when there has been a complete or nearly total failure of discovery. [citations omitted]

*Id.* at 995. Of particular importance in *Fox* was the fact that prior to the trial court's entry of the order imposing sanctions, "substantial compliance" had been reached with respect to nearly all of the outstanding discovery requests, for which sanctions were imposed.

■ While the above-quoted language may not preclude an order imposing sanctions on Marathon at this point, it represents a formidable barrier which, at least to this point, the plaintiff has not overcome. The affidavit of Patrick G. Pitet, an attorney for Marathon in its Casper Divi-

sion, indicates that although the documents destroyed in Findlay, Ohio are not available to the plaintiff, duplicates of those documents were believed to exist in Marathon's Casper, Wyoming office, and that all of that office's records have been made available for inspection by plaintiff's attorneys. Although Pitet was not so employed at the time these records were created, his affidavit does establish some familiarity with the records involved in this proceeding. Against this statement, it is possible to speculate that the "duplicates" sent to the Findlay, Ohio office of Marathon were either not true duplicates, or included marginal notes or other writings which would signify differences, or that the Findlay office's records, particularly of the budget meetings involved, may be significantly different or more inclusive than those found at the Division office; this is, however, only speculation. There is no showing to that effect in support of the motion. In view of the fact that these records have now been destroyed, they cannot be inspected to determine any differences, and I cannot assume any. To the extent that their existence may have been used to show knowledge on the part of Marathon's management, of the claims of communication now being asserted by K N Energy, it is important to note that Marathon has not denied these records' existence. *Cf. Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2nd Cir.1979), *cert. denied* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), and has made duplicates available. These factors lead me to conclude that, at least in the absence of a showing to the contrary, I must find that Marathon has met the standard of "substantial compliance" described in *Fox, supra,* so as to preclude the imposition of sanctions.

The evidence submitted tends to establish that these documents were destroyed by Marathon in the regular course of its business, although also, as the result of probable negligence on the part of Marathon's management, Marathon's house counsel, and/or Marathon's trial counsel in failing to prevent their destruction. While I in no way wish to convey acceptance of that low standard of care which seemingly allowed the destruction to occur,* under the circumstances shown by the evidence, I am unable to find the facts necessary to impose sanctions.

That is not to say, however, that K N Energy's motion could not be construed as a motion to compel the production (i.e. reconstruction) of these documents, pursuant to the provisions of Rule 37(a), Fed.R.Civ.P. Marathon states in its brief in opposition to the motion for sanctions that it believes these records can be reconstructed. If that be the case, they should be, if necessary. I will not comment further at this time on the matter of reconstructing these records, leaving it for the moment to counsel to seek agreement pursuant to the provisions of Local Rule 20I, after which, if necessary, the matter may be brought back before me.

IT THEREFORE HEREBY IS ORDERED, the motion of the plaintiff K N Energy, Inc. for sanctions, filing 142, is denied.

IT IS FURTHER ORDERED, each party shall bear its own expenses with respect to this discovery matter.

---

* As noted by Chief Justice Warren Burger, the "lack of knowledge" is no defense against a public policy which demands disclosure:

[A corporate manager has] not only a positive duty to seek out and remedy violations when they occur but also, and primarily *a duty to implement measures that will insure that violations will not occur.* The requirements of foresight and vigilance imposed on responsible corporate agents are beyond question demanding, and perhaps, onerous, but they are no more stringent than the public has a right to expect of those who voluntarily assume positions of authority in business enterprises whose services and products affect the health and well-being of the public that supports them.

*United States v. Park,* 421 U.S. 658 at 672, 95 S.Ct. 1903, 1911, 44 L.Ed.2d 489 (1975) (emphasis added), as quoted in Wessel, "Institutional Responsibility: Professionalism and Ethics," 60 Neb.L.R. 504, at 514 (1981). If the public, and incidentally the courts, have a right to expect such standards on the part of corporate management, it would seem that at least those standards might reasonably be expected from corporate counsel and trial counsel.

## ON MOTION TO COMPEL ANSWERS

A number of discovery matters are remaining for the court's resolution.

### I

■ First is Marathon's motion for an order compelling answers to its first set of interrogatories and third request for the production of documents. Regarding the interrogatories, the plaintiff has objected on the basis of the court's earlier scheduling order requiring that all interrogatories in this matter be served not later than August 1, 1983. Defendant Marathon contends, however, that by extending the discovery cutoff date until February 29, 1983 following the allowance of the filing of plaintiff's amended complaint, the earlier restriction on interrogatories had been lifted, so as to permit the serving of the interrogatories in question. In addition, Marathon contends that it would be unfair to preclude discovery by interrogatory following the filing of the amended complaint.

The November 30, 1983 order was the result of a telephone conference call with counsel then involved in the litigation. I have reviewed the tape recording of the conversation, and although the matter of extending the discovery cutoff date until February 29 was discussed, that discussion did not include any specific reference to the earlier restriction on interrogatories. Therefore, Marathon's first contention is incorrect. Were it not for the filing of the amended complaint, therefore, the motion would be denied. In considering the matter, however, I agree that to prohibit interrogatory discovery on the amended complaint would not have been appropriate; had I been requested to grant leave for the service of these interrogatories, it would have been granted. Rather than require such a request at this time, I shall simply allow the interrogatories to stand, and direct the plaintiff to respond.

With respect to the requests for production of documents, the only substantive objection not interrelated with the objections to the interrogatories, is that to request number 3, which calls for the production of reports received from consultants "relating to the storage of gas at the Huntsman Facility." Although the request is broad, I do not agree with the objection made by the plaintiff that it is "vague and ambiguous." I shall, therefore, order a response, limited by the provisions of Rule 26(b)(4) Fed.R.Civ.P.

### II

Marathon has also filed a motion seeking an order compelling answers to certain deposition questions which were propounded during the depositions of Donald Hutton, Kenneth Weikel, and M.R. Tek. The questions concerned a meeting held September 17, 1982 with one of the attorneys hired by K N Energy, together with certain K N personnel and other, outside consultants and experts hired by K N Energy, to discuss matters relating to this litigation, which had not yet been filed. According to the affidavit of Eugene A. Lang, Jr., one of plaintiff's attorneys who attended the meeting (filing 191), it was held at the request of Mr. James W. McCartney, one of the attorneys of the firm representing plaintiff, "to discuss matters relating to K N's then contemplated suit against Marathon and Double M Oil Company, including the factual basis for K N's claims." Notes of this meeting taken by Mr. Edward Thompson, who was at that time employed by the plaintiff, were disclosed to Marathon Oil in a production of documents, and were made "Exhibit 207," which was shown to the deponents in these depositions. It formed the basis of questions to which objection has been made on the grounds that the conversation taking place during the meeting was protected from disclosure by the attorney-client privilege and/or the work product rule, and that the production of Exhibit 207 was inadvertent, without any intention to waive the privilege. Marathon claims that the presence of third-party consultants at the meeting destroyed the applicability of the attorney-client privilege; that the work product rule does not apply; and that, in any event the production of the document waived any privilege.

■ The burden is upon the party claiming a privilege to demonstrate that it applies in the particular circumstances of the case. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983); *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 25 (9th Cir.1981); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 101 (W.D.Mo.1973). The plaintiff must therefore show not only that the attorney-client privilege or work product rule was applicable absent any waiver, but also that a waiver did not occur. *Weil supra* at 25. The court must evaluate the plaintiff's showing and the claim using a strict construction of privilege. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977). The applicable statutory reference is Section 27–503, R.R.S.Neb. 1943.

■ The first question, then, is whether the communications which transpired during the meeting of September 17, 1982 are protected from disclosure by the attorney-client privilege, or the work product rule. The only evidence before the court on this matter is the affidavit of Eugene Lang, noted above. That affidavit establishes the purposes of the meeting, although the affidavit is admittedly in broad, conclusory language. As to the question of whether the presence of persons from outside the K N Energy corporate body destroyed what would otherwise be privileged communications, the applicable test is stated in Section 27–503(1)(d):

> A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

K N maintains that the presence of the experts and consultants hired by the client corporation was necessary to facilitate discussion of the factual bases for its claims against Marathon and Double M. Although no Nebraska cases construing this section have been cited to the court, and I have found none applicable to the circum-stances here, I agree with the plaintiff that the discussion in *United States v. Kovel*, 296 F.2d 918 (2d Cir.1961), is helpful in this situation, even though in that case, the "third person," an accountant, was an employee of the attorney, not a consultant hired by the client:

> This analogy of the client speaking a foreign language is by no means irrelevant to the appeal at hand. Accounting concepts are foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases. Hence the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege, any more than would that of the linguist in the second or third variations of the foreign theme discussed above; the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. . . . What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer.* If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.

*Id.* at 922 (emphasis in the original). Even though the contentions in the Lang affidavit are conclusory, they are supported by the fact that the complaint in this action was filed shortly after the meeting, and by the fact that the consultants, or at least some of them, had been retained by the plaintiff prior to retaining its attorneys (i.e. the plaintiff had already received "non legal" advice from those third persons, negating any inference that the purpose of the September 12 meeting was for the rendering of such advice). *See* filing 193. In addition, there is no indication before me that the mere presence of the outside personnel was intended by K N Energy to waive any attorney-client privileges otherwise applicable, and I believe in the context of this meeting, such an indication would be necessary in order to deem the privilege

waived. *See United States v. Landof,* 591 F.2d 36 (9th Cir.1978); *United States v. Bigos,* 459 F.2d 639 (1st Cir.), *cert. denied, Raimondi v. United States,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); *F.T.C. v. T.R.W., Inc.,* 479 F.Supp. 160 (D.D.C.1979), *aff'd* 628 F.2d 207 (D.C.Cir.1980). I therefore conclude that the communications of the meeting held September 17, 1982 were encompassed within the attorney-client privilege as made applicable by Section 27–503(1)(d), and that the mere presence of the outside consultants and experts did not destroy the privileged nature of those communications. The notes of the employee of the plaintiff, therefore, are also within the privilege, being memoranda of the communications themselves. Having found both the conversations and the notes covered by the attorney-client privilege, I need not consider whether either is covered by the "work product" rule of Rule 26(b)(3) Fed.R. Civ.P.

■ Regarding the question of whether the privilege has been waived by the production of Exhibit 207 to the defendant Marathon, the affidavit of Eugene Lang is again the only description of the procedures utilized in K N's response to Marathon's request for production of documents. In the affidavit, Lang describes those procedures in general terms and concludes, "the production of Exhibit 207 was inadvertent." Although Marathon relies upon *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546 (D.D.C. 1970), for the proposition that any production of a document claimed privileged waives the privilege, I am persuaded that the better rule is that stated by the court in *Mendenhall v. Barber-Greene Co.* 531 F.Supp. 951 (N.D.Ill.1982), that "mere inadvertent production does not waive the privilege." *Id.* at 954. This is particularly appropriate in the context of this particular case where, according to the Lang affidavit in excess of 75,000 documents were produced in response to Marathon's first request for the production of documents. Even though the Lang affidavit does not go into detail as to how this particular document "slipped through the cracks" in K N Ener-

gy's procedures which he describes for reviewing possible privileged documents which were covered by the request, I am satisfied that, in view of the number of documents involved, and the procedural screening employed, the failure to catch this particular document prior to its production was in all probability not a deliberate act, or even the result of a conscious but erroneous decision. I therefore conclude that the privileged character which attached to the document as a result of the original communications which it apparently describes, has not been waived, and the deponents, therefore, will not be directed to respond to the line of questioning about the document, or about the meeting.

### III

Marathon's third motion requests leave to designate additional expert witnesses in response to two expert witnesses disclosed by the plaintiff on the deadline date, January 13, 1984. Specifically, Marathon seeks leave to adduce testimony from experts in response to the plaintiff's designation of Dr. Dennis D. Coleman, and a supplemental report of Mr. W.R. Chaney of Black and Veatch, engineering and economic consultants.

■ First, regarding the Chaney supplemental report, it appears that the report is indeed simply a supplementation of earlier matters provided to the plaintiff and disclosed to defendant Marathon. In these circumstances, I am not persuaded that the designation of an additional expert by Marathon is warranted, and I shall deny the motion in this respect.

■ Regarding the disclosure of Dr. Coleman the plaintiff makes no explanation for failing to disclose Dr. Coleman prior to the deadline when the order for disclosure directed that to be done "as soon as practicable but not later than January 13, 1984." On the other hand, defendant Marathon also fails to explain the reason why the motion was not filed until February 29, 1984, some six weeks after the disclosure. Be that as it may, in view of the motion, I

must presume that defendant Marathon has hired an additional expert and that his or her report could be made available immediately, in light of Marathon's offer stated in the motion to make any additional witnesses available for deposition prior to trial. I therefore shall permit the naming of one additional expert witness in the field of geochemistry carbon isotope ratios and isotopic identification of gas, such expert and the information described in Rule 26(b)(4)(A)(i), Fed.R.Civ.P. to be disclosed to the plaintiff within seven days, and such expert witness to be made available for deposition by plaintiff, at defendant Marathon's expense, not less than five days prior to the commencement of trial.

## IV

■ Defendant Marathon has also requested leave to depose the author or authors of certain correspondence received by the plaintiff for Keplinger and Associates, Inc. K N opposes the motion, first on the basis that Keplinger and Associates have not been disclosed as an expert expected to be called to testify at trial, and that therefore, Marathon must demonstrate the "exceptional circumstances" required under Rule 26(b)(4)(B). In order to demonstrate the applicability of Rule 26(b)(4)(B), it is the plaintiff's burden to show that Keplinger and Associates was retained or specially employed in anticipation of litigation or preparation for trial. No such showing has been made.

K N also argues that Marathon has had sufficient opportunity to depose personnel from Keplinger and Associates, in light of the designation of Kenneth Weikel as an expert, and his work with Kelpinger and Associates for the plaintiff. Had the subject correspondence been disclosed to Marathon in a more timely fashion, I might agree; however, in light of the late disclosure, K N has only itself to blame for causing the need for additional discovery at this late date. The motion will be granted.

## V

Marathon has also filed a motion for leave to depose Donald C. Swanson, and W.R. Chaney, and to complete the depositions of Rasin Tek and Quinton Drake. K N does not oppose the motion, and it will be granted.

## VI

Defendant Marathon has also filed a motion for leave to take the deposition of Edward Thompson. In support of the motion Marathon states that it has reason to believe that Mr. Thompson is the author of Exhibit 207. Indeed, the affidavit of Eugene Lang filed in opposition to Marathon's motion to compel answers to deposition questions (filing 191) confirms this belief. The motion to take the Thompson deposition discloses that the purpose of the deposition would be to inquire as to the meeting held September 17, 1982. In view of my finding above that this meeting, and Exhibit 207, are subject to the attorney-client privilege, and further in light of the fact that if the purpose of the deposition were anything other than the September 17, 1982 meeting, the deposition should have been taken long before now, the motion will be denied.

In accordance with the foregoing,

IT THEREFORE HEREBY IS ORDERED:

1. The motion of defendant Marathon to compel answers to its first set of interrogatories, and responses to its third request for production of documents, filing 164, is granted and the plaintiff K N Energy, Inc. shall serve its responses to the subject interrogatories within ten days, and shall produce the documents referred to therein, as well as the documents which are the subject of request for production number 3, as limited by the provisions of Rule 26(b)(4) Fed.R.Civ.P. within ten days.

2. The motion of defendant Marathon to compel answers to deposition questions, filing 165, is denied.

3. The motion of defendant Marathon for leave to designate additional expert witnesses, filing 166, is granted insofar as said defendant is hereby permitted to name one

additional expert in the fields of geochemistry carbon isotope ratios and isotopic identification of gas, and to disclose the information described in Rule 26(b)(4)(A)(i) Fed.R. Civ.P. within seven days, and thereafter to make such expert witness available for deposition by the plaintiff not less than five days prior to the trial of this matter, at Marathon's expense; and is denied in all other respects.

4. The motion of defendant Marathon for leave to depose the author or authors of the noted correspondence from Keplinger and Associates, Inc., filing 167, is hereby granted, and the subject deposition or depositions shall be completed not less than five days prior to the trial of this matter.

5. The motion of the defendant Marathon for leave to depose Donald C. Swanson and W.R. Chaney, and to complete the depositions of Rasin Tek and Quinton Drake, filing 168, is hereby granted, and said depositions shall be completed not later than five days prior to the commencement of the trial of this matter.

6. The motion of defendant Marathon for leave to take the deposition of Edward Thompson, filing 173, is hereby denied.

7. Each party shall bear its own expenses with respect to these discovery matters.

### ON MOTION TO COMPEL PRODUCTION

The plaintiff's motion to compel the production of documents withheld from production, filing 227, has been reassigned to the undersigned magistrate. By its motion plaintiff seeks to obtain production of the following documents:

—handwritten notes and calculations concerning computer simulations of the West Engelland and Huntsman Fields

—typed documents concerning those simulations

—29 pages of computer generated graphs and charts concerning those simulations

—15 computer printouts

—20 pages of photocopies of well logs, with notes

—copies of several maps of the fields

—3 handdrawn graphs showing production and pressure data for the West Engelland and Huntsman Fields

—a handdrawn table showing oil and water production

—a letter written August 6, 1958, with notations made on January 18, 1983.

*See* filing 228. The defendant Marathon has objected to production on the ground that these documents are work product protected by the provisions of Rule 26(b)(3), Fed.R.Civ.P. Plaintiff also seeks to depose several Marathon employees who created the above documents or worked with them. *See* filing 254.

K N argues that Marathon has waived any work product privilege, first, by its untimely assertion of the privilege, and second, by disclosing these materials to Scientific Software Intercomp, one of Marathon's outside experts. I have considered these arguments, as well as the other arguments presented by the parties in the briefs submitted. I conclude that the defendant Marathon has indeed waived the privilege embodied in the "work product rule," and therefore, I grant the motion to compel.

K N's first set of requests for production was made October 8, 1982, filing 3. Although most of the documents now in dispute did not exist then, the request for production was a continuing one and sought all appropriate documents created before the date of Marathon's response. On January 10, 1983, Marathon sent K N a list of documents which it was withholding as privileged. As far as I can determine, none of the documents now in dispute which existed at the time the list was made were listed. Of course, the computer printouts, which were compiled in late January and early February, were not listed.

On March 1, 1983, I issued a memorandum and order, filing 20, which memorialized the fact that at a preliminary pretrial conference held before me on February 24,

1983 the parties were told that any party withholding a document as privileged should identify the document by author, date, recipient, to describe its nature and general content, and to list the specific basis for withholding it from production. On March 21, 1983, Marathon's response, filing 27, to K N's first set of requests was filed. This response said that Marathon had produced all non-privileged documents, and that it objected to the requests insofar as they sought materials protected by the attorney-client or work product privileges. The response did not, however, identify any of the documents in question here.

On July 14, 1983, K N made a second set of requests, filing 49, none of which appear to include the contested documents. In its response, Marathon said it was renewing all claims of privilege made earlier.

On October 3, 1983, K N issued its third set of requests. It appears that requests 11, 19, 20, 21, 22, 29, and 30 ask for production of the documents in question, especially the computer simulations. *See* filing 229. Marathon did not respond until November 16, 1983. It answered the aforementioned requests by saying the documents already had been produced or were being produced. It also said Marathon was renewing its privilege claims, although, again, it did not identify any documents as directed by my previous order.

On January 27, 1984, K N issued its fourth set of requests. In its response served February 27, 1984, Marathon objected to the eighth request therein on grounds of work product. Again, however, it did not identify which documents it was withholding.

On March 5, 1984, K N asked Marathon to identify the withheld documents. *See* filing 228, attachment (a). Marathon did so on April 6, 1984. *See* filing 228, attachment (b). It is the documents listed in the April 6, 1984 letter from Marathon to K N that K N now seeks to obtain.

▆▆▆▆ Rule 34(b), Fed.R.Civ.P., says that the recipient of a request to produce documents shall serve, within 30 days, a written response, which shall specify any reasons the party has for objecting to production. A failure to make a timely objection to a request for production or interrogatories results in a waiver of any otherwise-valid objections. *Shenker v. Sportelli*, 83 F.R.D. 365, 366–67 (E.D.Pa.1979); *United States v. 58.16 Acres of Land, More or Less*, 66 F.R.D. 570, 572 (E.D.Ill. 1975) and cases cited therein; *Davis v. Romney*, 53 F.R.D. 247, 248 (E.D.Pa.1971). The objecting party also must specify why the requests for production were objectionable. Rule 34(b); *United States v. 58.16 Acres of Land, More or Less*, 66 F.R.D. at 572.

▆▆▆▆ Marathon argues that its objection to paragraph 8 of the fourth set of requests was timely, being made 30 days after the requests were issued. This is true. But that response did not identify the withheld documents as required by my order of March 1, 1983. Furthermore, Rule 34(b) requires, the objecting party to state the "reasons for objection." A general objection of work product is insufficient under this definition where it does not designate which documents allegedly enjoyed that privilege. *See* 8 Wright and Miller, Federal Practice and Procedure, Civil, § 2213, at 641, n. 18. Without such a designation, the party seeking discovery cannot present an adequate motion to compel production under Rule 37, Fed.R.Civ.P.

Marathon's failure to make a sufficient objection is supplemented by its earlier conduct. As K N aptly points out, several of the production requests in its first set of requests called for the production of the documents at issue here. Even though some of the documents did not exist at the time the requests were made, they were in existence by the time Marathon presented a response. Marathon did not identify them as being withheld, but made only a general claim of privilege. Similarly, several parts of the third set of requests concerned the documents in question; again, Marathon's objection was overly general and did not identify any withheld documents. Marathon's conduct meant that K

N did not learn that the documents in question even existed or were claimed as privileged for more than a year after they were created and after they should have been identified.

Marathon seeks to avoid its dilatoriness in regard to the first and third sets of requests by arguing that the present motion to compel concerns only the fourth set. This does not excuse Marathon's impermissably vague response to the fourth set, nor does it eliminate the significance of Marathon's earlier responses. If the work product privilege was waived by the responses to the first and third sets of requests, as I conclude that it was, then Marathon could not assert successfully the privilege in response to the fourth set. Furthermore, the earlier responses show that Marathon's intransigence as to the fourth set of requests was not an isolated incident. Hence, on the basis of the arguments of counsel and the records before the court, I will direct the immediate production of the documents in question.

Because K N's request for additional deposition testimony, filing 254, is made for the purpose of augmenting its arguments regarding the motion to compel, those depositions are no longer necessary, and the request will be denied.

As is clear from the preceding discussion, I do not find Marathon's position in this matter to have been "substantially justified." I, therefore, will order Marathon to pay the expenses, including attorney's fees, incurred by the plaintiff in bringing this matter to the court.

IT THEREFORE HEREBY IS ORDERED:

1. The motion of K N Energy, Inc. to compel the documents previously withheld from production, as described in this memorandum, filing 227, is hereby granted, and defendant Marathon Oil Company shall produce the withheld documents listed herein within 14 days.

2. Plaintiff is hereby awarded its expenses, including attorney's fees, in bringing this discovery matter to the court.

Counsel shall confer regarding the amount of expenses and fees to be awarded, and, in the event that they are in disagreement as to such amount, the plaintiff's application therefor shall be filed within 14 days. Defendant Marathon shall have 14 days thereafter in which to submit its response.

3. The plaintiff's motion to conduct additional depositions, filing 254, is hereby denied.

## ON MOTION FOR LEAVE TO AMEND

By filing 361 defendant Marathon Oil Company seeks two things: first, leave to amend its answer, and the pretrial order, (a) to raise issues concerning the plaintiff's settlement with the working interest and royalty interest owners as a defense, and (b) to raise issues concerning primary jurisdiction stemming from the plaintiff's recent application to the Federal Energy Regulatory Commission ("FERC") for a rate increase; and second, to bifurcate the trial of this matter so that this court would first determine liability questions, leaving for resolution by the FERC the issues over which it has primary jurisdiction, following which this court would determine issues of damages, as applicable. Insofar as raising defenses concerning K N's settlement with the Double M working interest and royalty interest owners is concerned, that aspect of Marathon's motion has been previously granted by the trial judge during a conference with counsel. *See* filing 367. The remainder of the motion, however, has been referred to the undersigned.

On October 31, 1984 the plaintiff filed with the FERC an application for a rate increase of some 8.4 million dollars. One of the reasons stated in the notice of proposed changes is the Amortization of Property Loss, loss of gas from the Huntsman storage facility over five (5) years; (*see* filing 362, attachment 1). Defendant Marathon has been permitted to intervene in that proceeding (see filing 362, attachment 2), and now asserts that the FERC has primary jurisdiction with respect to three issues:

(a) whether K N operated the Huntsman Storage Field in an unreasonable and imprudent manner and, if so, the impact of said imprudency as determined by the FERC, together with findings of fact concerning what would be prudent levels of operation;

(b) whether K N improperly and unlawfully abandoned the Huntsman Storage Facility without FERC authorization; and

(c) the accounting treatment, including the "value," to be given to any storage gas which may have migrated from the Huntsman Reservoir, or otherwise may be unaccounted for or "lost."

Marathon proposes that this case proceed to trial only insofar as determining specific liability issues which it sets forth in the motion, after which this court should stay its hand pending the FERC's resolution of the above three issues, after which, if necessary this court should proceed to a determination of damages questions.

In *Far East Conference, et al. v. United States, et al.,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), the government brought suit to enjoin alleged violations of the Sherman Act resulting from the use by the Conference, an association of steamship companies engaged in international trade, of a dual system of rates for shipping. The Supreme Court agreed with the defendants' contention that the matter should first be referred to the Federal Maritime Board under the doctrine of primary jurisdiction, to allow the Board to determine the validity of a dual system of shipping rates, relying on its consideration of technical and expert facts, including economics, facts peculiar to the industry, competitive conditions in respect to shipping with foreign countries and other matters not generally familiar to a judicial tribunal. *Id.* at 573–74, 72 S.Ct. at 493–94. Relying on the Court's decision in *United States Navigation Co. v. Cunard Steamship Co.,* 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932), the Court described the doctrine of primary jurisdiction as

... a principal, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter would not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for assertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Id.,* 342 U.S. at 574–575, 72 S.Ct. at 494.

In *United States v. Western Pacific Railroad Co,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the government was sued by shippers for its refusal to pay a higher tariff rate, for the shipment of napalm bombs which had, at the time of the shipment not yet been fully constructed. The shippers contented that the bombs, even though not yet fused, should have been classified as "incendiary bombs" within the meaning of that term in the applicable tariff. The Court looked to the purpose of the legislation at issue (the Interstate Commerce Act) in deciding whether determining what was meant by "incendiary bombs" required analysis of intricate and technical aspects of transportation. The court concluded that such an analysis was required, and directed that the matter be referred to the Interstate Commerce Commission for resolution.

In *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), the plaintiff's seat on a commodities trading exchange was transferred to another by the company from whom he had borrowed funds to purchase the seat. He brought an antitrust action

against the company and the exchange alleging a conspiracy between them to deprive him of his trading privileges. The district court dismissed the complaint, and the dismissal was reversed by the Court of Appeals, which ordered the case stayed for reference to the Commodities Exchange Commission under the doctrine of primary jurisdiction. In affirming the Court of Appeals, the Supreme Court noted the regulatory scheme prohibiting trading in commodities except by or through registered brokers and found it "essential" for the antitrust court to determine whether the Commodities Exchange Act or any of its provisions were incompatible with the maintenance of an antitrust action in these circumstances. Second, the Court determined that at least "some facets" of the parties' dispute were within the Commission's statutory jurisdiction (*i.e.* whether the transfer of Ricci's membership violated the Exchange's rules, which in turn required analysis of the "scope, meaning, and significance" of such rules). *Id.* at 305, 93 S.Ct. at 582. Third, the Court found that the adjudication of the rules dispute by the Commission would be of "material aid" to the antitrust court in resolving the immunity question raised by the defense, and that such resolution would best be performed by those familiar with the customs and practices of traders in the commodities market.

Perhaps the case most similar to the one at bar is *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). In that action the plaintiff had been "bumped" from a flight for which he had held a confirmed reservation, as a result of the defendant airline's overbooking policies. He brought a common law tort action against the airline for fraudulent misrepresentation, challenging the airline's failure to advise its passengers of its overbooking policy, but did not challenge the policy itself. The airline defended that the action should be stayed pending resolution of the matter by the Civil Aeronautics Board, which had authority to issue cease

and desist orders against "deceptive" practices utilized by regulated air carriers under the Federal Aviation Act. The court rejected the airline's theory on several grounds. First, the Court noted that unlike the statute in *Texas and Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the scheme of regulation under the Federal Aviation Act did not provide for an exclusive remedy to consumers in the form of seeking cease and desist orders from the CAB. Rather, the saving clause of the statute preserved common law remedies which, if applied in that case would not affect the Act's efficacy.[1] Second, the Court found that a breach of the statute in question was not "coextensive" with a breach of the airline's duty under the common law. *Id.*, 426 U.S. at 302, 96 S.Ct., at 1986. Third, the Court found that the issues involved in determining the airline's alleged "misrepresentation" under common law were not within the expert and specialized knowledge of the agency such as to require referral under *United States v. Western Pacific Railroad Co.*, *supra*, but rather "within the conventional competence of the courts." *Id.* at 305, 27 S.Ct. at 1987.

These principles have been applied in this circuit, as well. In *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255 (8th Cir.1980), the court found that referral of an antitrust claim to the Civil Aeronautics Board was not necessary where, even though the CAB had authority to inquire into "unfair competition," the resolution of that inquiry in this case would not have disposed of the antitrust claim; unlike the *Ricci* case, even if the CAB would find no "unfair competition," that would not necessarily amount to adoption and approval by the CAB of the airline's activities; and the CAB's determination on the "unfair competition" issue would not materially aid the court. On the other hand, in *United States v. United States Steel*, 645 F.2d 1285 (8th Cir.1981), the court applied the primary jurisdiction doctrine and required referral of the ques-

---

1. *Compare* 15 U.S.C. § 717t(b).

tion of the meaning of "interior destination" in the applicable tariff involved in a shipping dispute, to the Interstate Commerce Commission, finding that if the matter were not so referred, it would, in a normal contract dispute, be a question of fact, the resolution of which in many cases could lead to dissimilar results in similar cases in a subject area in which uniform and expert administration was necessary.

In *Oasis Petroleum Corp. v. Department of Energy*, 718 F.2d 1558 (Temp. Emer.Ct.App.1983), the court catalogued the above principles succinctly as follows: (1) whether the question at issue is within the conventional experience of judges; (2) whether the issue lies peculiarly within the agency's discretion or requires the application of the agency's particular expertise; (3) whether there exists a danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Id.* at 1564. Although the defendant Marathon cites the *Oasis* case, it does not make any showing that these factors are applicable in the instant case.

■ Marathon argues that a stay of the "damages" phase of this case is required because "pending FERC proceedings will aid in resolving important issues in the court case." Defendant's brief, p. 9. Marathon does not, however, set forth which issues it is referring to. In the pretrial order Marathon's version includes some 52 controverted issues. It appears from the arguments Marathon raises that it is asserting FERC's primary jurisdiction over the issues of contributory negligence,[2] Issues of abandonment,[3] and the issue concerning the measure and amount of any damages recoverable by K N,[4]. I have no basis to conclude, however, that any of these issues' resolution in this court would be materially aided by the FERC's resolution of them before that body. First, regarding the contributory negligence issues, it is not at all clear that this court must reach the issues of contributory negligence

in order to resolve this action, particularly in view of the plaintiff's several theories of recovery. Second, it would appear that any issues of contributory negligence, if reached, should be resolved in the "liability" phase of the trial, rather than at some future "damages" trial. Third, there is no argument made by Marathon that a finding by the FERC that the plaintiff's operation of the "Huntsman Storage Facility was "improper," "unreasonable," or "imprudent" would necessarily require a finding in this court of contributory negligence on K N's part. Fourth, regarding the contentions of "abandonment," I note that the issue sought to be certified to the FERC is whether the plaintiff abandoned the "Huntsman Storage Facility," whereas the issues framed by Marathon in the pretrial order for resolution in this case have to do with an alleged abandonment of the plaintiff's "gas," not the "facility"; thus, it is clear that these issues are not coextensive, either. Fifth, no argument is made that the issues pertaining to K N's valuation of "lost" storage gas for purposes of the rate making authority is to be regarded as identical to the standard of damages computations which will be applied in this action. In sum, the issues have not been shown to be "coextensive," *Nadar, supra,* and I cannot conclude that the FERC's action, if undertaken, would "materially aid" this court in resolving the issues before it.

Marathon also argues that the proposed bifurcation and stay are necessary to ensure the uniform regulation of natural gas storage facilities and storage gas under the FERC's jurisdiction. No showing is made, however, as to how the resolution of the issues before this court, by this court, might lead to inconsistent results in other matters pending before the Commission. *Compare United States v. United States Steel, supra.* This is not a case which requires interpretation of a tariff term, such as that in *Western Pacific Railroad Co., supra,* nor has the defendant pointed

---

**2.** Issues 4(d), 5(d), 6(d), 7(d) and 30.

**3.** Issues 4(a), 5(a), 6(a) and 7(a).

**4.** Issue 37.

out any specific regulations of the FERC which must be interpreted by this court in order to reach a resolution of the issues raised in the pretrial order. Rather, it appears that the issues raised in the pretrial order are such as to have no effect on the FERC's ability to carry out its responsibilities in a uniform fashion.

Marathon also argues that judicial efficiency demands that the trial be bifurcated and these issues be referred to the FERC. However, Marathon's argument in that respect is premised upon the identity of the issues it seeks to refer to the FERC, and those presently pending before this court. As discussed above, this premise is incorrect; hence, there is no basis to conclude that judicial resources would be conserved by the proposed deferral.

In addition, Marathon has not made a showing to the effect that the issues raised in the pretrial order are such as would fall outside the general experience of judicial tribunals. To the contrary the issues in this litigation, like the common law tort of fraudulent misrepresentation in *Nadar, supra, i.e.* contributory negligence, abandonment of property, and damages, are those traditionally resolved by judges.

The last criterion, prior application to the administrative agency, does not appear to be applicable in this case, even though a prior application for a rate increase has obviously been made, for the reason that the issues raised by the pretrial order, and by defendant Marathon in its motion, are not identical. Thus, there is no assurance that the FERC will resolve any issues pending in this litigation. As noted by the plaintiff, the FERC has not always accepted responsibility for all of the issues the courts have referred to it. *See e.g. Transcontinental Gas Pipeline Corporation,* 13 FERC, ¶ 61,147 (November 19, 1980) at 61,-302.

Although Marathon also appears to argue that the fact that the FERC permitted it to intervene in the plaintiff's rate making proceeding is an indication of the FERC's willingness to adjudicate the proposed issues Marathon raises, the remarks of the Commission in the decision permitting the intervention appear to be susceptible at least as much to an interpretation that the Commission would be aided by this court's determinations of the issues before the court, as the converse. I therefore do not place any weight on the language in the Commission's decision taking note of this action.

[T]he doctrine of primary jurisdiction ... does not require resort to "an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency." *Amalgamated Meat Cutters v. Jewell Tea,* 381 U.S. 676, 686, 85 S.Ct. 1596, 1600, 14 L.Ed.2d 640 (1965) (quoting *Maritime Board v. Isbrandtsen Co.,* 356 U.S. 481, 521, 78 S.Ct. 851, 873, 2 L.Ed.2d 926 (Frankfurter, J., dissenting)).

Insofar as I find no merit to the proposed amendment to the defendant's answer, and, more properly, I find that no amendment to the pretrial order is required to prevent "manifest injustice" under the provisions of Rule 16, Fed.R.Civ.P.,

IT THEREFORE HEREBY IS ORDERED, that portion of the motion of the defendant Marathon which seeks leave to amend its answer, and the pretrial order to assert primary jurisdiction in the Federal Energy Regulatory Commission over certain specific issues stated therein and which seeks bifurcation of the trial of this matter, filing 361, is hereby denied.

## ON APPLICATIONS FOR FEES AND EXPENSES

There are yet pending in this matter three applications for fees and expenses which resulted from earlier orders of the court in discovery matters, pursuant to Rule 37, Fed.R.Civ.P. There are six matters for which application has been made, which will be discussed separately below. Beforehand, however, some general comments are in order.

The total amount of expenses and fees at issue in these applications is $173,742.63. The hourly rates for attorneys fees claimed range from $34.73 (for plaintiff's in-house counsel) to $185.00 (for plaintiff's lead counsel). Fees have been claimed for paralegals and others, as well as expenses in the nature of air fares, car rentals, meals, telephone calls, and photocopying.

There have been numerous discovery skirmishes between the main parties in this case, caused partially by the complex, technical nature of the disputed facts giving rise to it, partially by the resultant need to employ numerous experts on those facts and interpretations of technical data, partially by the need to examine thousands of documents, and partially by what appears to the court to be a decidedly limited capacity on the part of counsel for both sides to cooperate. Whether the case was made unnecessarily more complex because of the last element remains open to question. That factor, exhibited in vitriolic exchanges between counsel in the court's presence, during depositions, and even in the briefs submitted, has caused me to consider the parties' applications for expenses and fees with a good bit of skepticism.

There has been, with respect to the underlying discovery disputes giving rise to these applications a tendency on both sides to over argue. Although I have not reviewed the antecedent briefs in minute detail, it seems on recollection that not one assertion, no matter how inconsequential, was left undenied; not one denial left uncontroverted; not one controverted denial left undisputed. Although the local rules of the court provide for, with respect to motions, a brief and an answer brief, nearly every motion in this case has been treated with, in addition, a response to the answer, and a reply to the response. In addition, although the local rules provide for a ten-page limit on briefs, the parties in this case have repeatedly submitted lengthy briefs on these discovery questions, in addition to literally hundreds of pages of supportive materials. That, in and of itself, is not necessarily to be criticized for the court needs the assistance of counsel's arguments in considering the questions presented; however, where such arguments are redundant, as was often true in these motions, the court's willingness to award fees for such excesses is affected.

The applications themselves are inadequate in many respects. There are cryptic descriptions of work performed by counsel, its necessity or utility, and its relevance to the issues at hand. In some cases the persons participating in preparation or work which is claimed reimbursable are not sufficiently identified. In others, time is claimed for more than one attorney to participate in a "conference" with out explanation of the necessity of the conference, where it was held, the subjects that were discussed, or what was resolved and the reasons for the length of the conference. In cases of research, there is no description of the issues researched, or whether the results were incorporated into pleadings or briefs submitted to the court. In instances where more than one attorney participated in an activity, there is no explanation for the dual attention. Further, there are no reasons to support the course of an attorney with a higher hourly rate being utilized for a particular task when possibly an attorney with a lower hourly rate may have been able to perform the same task less expensively.

Regarding expenses, there has been no attempt to itemize the claimed reimbursable expenses with sufficient accuracy so as to enable meaningful consideration. For example, with respect to photocopying expenses, there are no descriptions of what was photocopied, why, justification for the number of copies, how many pages, or what use was made of them. With respect to long distance telephone expenses, while there was a listing of cities called, no further explanation is included. Travel expenses have in one instance been itemized to some degree, but further particularization would be necessary to review the reasonableness of these claims.

My task would be less difficult had this court previously adopted guidelines for attorneys in applying for fees and expenses, such as those suggested by Judge Grady's order on the subject in *In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (1983). Not having exercised the foresight to cite those guidelines to counsel earlier, however, I am left essentially three alternatives: to simply grant the requests as submitted accepting at face value the claimants' assertions as to necessity and reasonableness; deny all of the applications without prejudice to their renewal at such time as more thorough documentation can be provided; or attempt to evaluate the claims made in light of the court's experience in having ruled upon the antecedent motions and familiarity with the case. I choose the last alternative. In doing so, I am cognizant of the fact that trial in this complex case is scheduled to begin only days from the issuance of this order. Although the provisions of Rule 37 allow for a hearing to be held on such applications, none has been requested in these instances (although the defendant has requested discovery on the applications); I do not desire to create a whole separate proceeding on the fees questioned on these discovery matters. Thirdly, there is no indication that the parties have any additional documentation which was not submitted to the court on these applications. In spite of these shortcomings I have considered the fee applications with respect to the types of activities for which compensation is requested, and the reasonableness of the hourly compensation sought, as well as the expenses claimed.

Separate comment is in order with respect to the reasonableness of the fees requested in this matter. Both the plaintiff and the principal defendant have retained out-of-state law firms to represent them in this action. The fees requested in behalf of the attorneys and paralegals in these law firms are generally in excess of fees awarded in this community for similar services in discovery matters. Neither side has filed affidavits or other materials indicating that the fees sought are reasonable,

or that the activities involved necessitated the use of counsel whose fees were higher than local counsel, or that justified the use of lead counsel in the particular activities which are the subject of these applications. I have considered this matter at some length. There is no doubt that the substantive issues involved in this litigation are complex in the sense of requiring counsel with skills in oil and gas law as well as trial advocacy. Despite the lack of a showing regarding the qualifications of lead counsel on either side in these respects, it can safely be said that the legal community in Lincoln, Nebraska is not blessed with specialists in oil and gas law, although it can also be said that practitioners here are generally at least as skilled as litigators as attorneys who appear here from other parts of the country, and that is certainly true of local counsel in this case. *Cf. Avalon Cinema Corp. v. Thompson,* 689 F.2d 137 (8th Cir.1982). As the matters involved in these discovery disputes did not always involve the substantive issues of the case, I am not inclined to assess fees based on the parties' respective claims of reasonable hourly rates, particularly without any showing regarding their reasonableness; rather, I allow the rate of $75.00 per hour for attorneys and $30.00 for paralegals in such instances, as I consider those rates to reflect the prevailing market rates in this community for such services. Where, however, I agree that the involvement of lead counsel in bringing these discovery matters to the court was essential, I do allow a higher hourly rate of $125.00 for attorney time. I reject the notion that any higher amount would be reasonable for these services. I recognize, of course, that the parties themselves have voluntarily agreed to pay their own counsel higher amounts, perhaps as reflected in these fee applications. I do not look upon those decisions by the parties, however, as binding on what the court should determine as reasonable in imposing involuntary fees upon a party.

I

By filing 335 the defendant Marathon seeks $9,667.75 in attorneys fees in

**32**

connection with the motion of this defendant to impose sanctions upon KN Energy, Inc., the plaintiff. (Filed November 29, 1984). This application follows my order of November 14, 1984 (filing 329) in which I considered Marathon's challenge to some 49 of the plaintiff's answers to its interrogatories, concluding that twenty-four of them were insufficient, and that another nine answers' sufficiency would have to be determined at or after trial. In connection with this motion, Marathon claims fees as follows:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—G. Donohue Kane | 1.50 | $ 85.00 | $ 127.50 |
| B—Ruth Mey, Paul Oh and Joseph Wilson | 7.13 | 50.00 | 356.50 |
| C—E. Hil Margolin | 45.75 | 85.00 | 3,888.75 |
| D—Steven P. Bailey | 29.75 | 120.00 | 3,570.00 |
| E—Charles W. McDermott | 11.00 | 150.00 | 1,650.00 |
| F—John S. Pfeiffer | .50 | 150.00 | 75.00 |
| Total | 95.63 | | $ 9,667.75 |

Information concerning time spent on this matter has been provided in the defendant's filings in support of its reply to the plaintiff's responses to this application in the form of computerized printouts of various attorneys' time statements. These "detail backup" statements are cryptic at best in their description of the activities of counsel, and are sometimes illegible. (See filing 423). They are nevertheless, of some assistance in evaluating the defendant's claim.

E. Hil Margolin had, up until the time of the application for fees, not filed an appearance in this case. *Compare, Rose v. State of Nebraska,* 748 F.2d 1258 (8th Cir.1984). Mr. Margolin was admitted to practice for the purposes of this case on February 14, 1985 (see filing 404). G. Donohue Kane, Ruth Mey, Paul Oh and Joseph Wilson are not identified in the materials submitted in support of the application; presumably they are attorneys, although this is not entirely clear. Further, their actions with respect to the motion are not clear, either. I do not find the documentation sufficient to grant fees for these individuals.

With respect to Mr. Margolin, I note that all but four hours of the time he claims to

have spent on the matter was documented as research and drafting for the reply brief, and the supplement thereto, on the motion, which entailed some eighteen pages of end product. I find the time spent in this endeavor to be excessive, and shall reduce it to twenty hours.

Mr. Bailey claims to have spent nearly thirty hours in the preparation of the brief on the motion; a good deal of this time was spent "conferring" with other counsel. I shall accordingly reduce Mr. Bailey's compensable time to fifteen hours.

Although KN argues that the amount of the fee award should be reduced proportionately to the relief granted by the order, I do not find any need to do so in this instance, as the defendant prevailed on the majority of issues raised, and this factor has been considered in making the reductions above. Therefore, with respect to Marathon's first application for fees, filing 335, I make the following award:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—G. Donohue Kane | 0 | $ n/a | $ –0– |
| B—Ruth Mey, Paul Oh and Joseph Wilson | 0 | n/a | –0– |
| C—E. Hil Margolin | 20.00 | 75.00 | 1,500.00 |
| D—Steven P. Bailey | 15.00 | 75.00 | 1,125.00 |
| E—Charles W. McDermott | 11.00 | 75.00 | 825.00 |
| F—John S. Pfeiffer | .50 | 125.00 | 62.50 |
| Total | | | $ 3,512.50 |

## II

On December 3, 1984 the plaintiff filed a motion for reconsideration of the court's order of November 14, 1984 (filing 329) which had granted Marathon's motion for sanctions. (*See* filing 337). After first allowing the plaintiff another opportunity to file supplemental answers to the defendant's interrogatories, the motion for reconsideration was granted in part on January 16, 1985. Because, however, the modification of the November 14, 1984 order was not complete, and because of my view that the plaintiff's trial tactics had been the cause of the delay in providing answers to these interrogatories, I again imposed fees and expenses. By filing 401 the defendant has made application for such fees as follows:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—Charles W. McDermott | 22.00 | $150.00 | $ 3,300.00 |
| B—Steven P. Bailey | 23.00 | 120.00 | 2,760.00 |
| C—E. Hil Margolin | 103.20 | 85.00 | 8,772.00 |
| D—John S. Pfeiffer | .75 | 150.00 | 112.50 |
| E—G. Donohue Kane | 1.50 | 85.00 | 127.50 |
| F—Mary E. Walta | 1.00 | 75.00 | 75.00 |
| G—Ruth Mey | .25 | 50.00 | 12.50 |
| Mailing and copying expenses | | | 87.00 |
| Total | 151.70 | | $15,246.50 |

I have reviewed the claim, the documents supporting it, the materials submitted in opposition to the motion for reconsideration which was at issue, and the briefs of the parties. I conclude that the number of hours claimed in behalf of Mr. McDermott are excessive, in view of the computer statements referring to substantial "conference" time and substantial time allocated to "review" of the court's orders.[1] I conclude that the time claimed in behalf of Mr. Margolin is excessive and represents a disproportionate allocation of time to the issues involved in the pending motion. I conclude that the amounts of time claimed in behalf of Mr. Kane, Ms. Walta, and Ms. Mey are insufficient to have allowed those individuals to have had any reasoned understanding of the issues involved. Therefore, in keeping with the considerations discussed above, I make the following awards:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—Charles W. McDermott | 6.00 | $ 75.00 | $ 450.00 |
| B—Steven P. Bailey | 23.00 | 75.00 | 1,725.00 |
| C—E. Hil Margolin | 20.00 | 75.00 | 1,500.00 |
| D—John S. Pfeiffer | .75 | 125.00 | 93.75 |
| E—G. Donohue Kane, Mary E. Walta, and Ruth Mey | -0- | n/a | -0- |
| Total | | | $ 3,768.75 |

### III

By filing 384 (filed January 17, 1985) the plaintiff has applied for a total of $148,828.38 in fees and expenses, in response to previous orders determining discovery disputes in this matter. Each of the separate items will be discussed more specifically below; however, two matters are disputed with respect to several of the claimed items in this application, which will be discussed here.

First, throughout these applications claim is made for fees for work performed by Eugene A. Lang, Jr., the in house counsel for plaintiff. Defendant Marathon argues that such fees are not compensable, in that Mr. Lang's salary would be paid by the plaintiff regardless of whether he worked on this case or on some other matter. Thus, defendant argues, plaintiff has incurred no additional cost as a result of his participation with trial counsel in this matter. I reject this contention. *See Textor v. Board of Regents*, 711 F.2d 1387, 1396–1397 (7th Cir.1983); *see also Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (rejecting the argument that a "cost of service" figure should be utilized by the court in awarding fees under 42 U.S.C. § 1988 to a prevailing party represented by a non-profit, private legal services organization, instead adopting a "prevailing market rate" standard). Moreover, I do not find the fact that the plaintiff has utilized its house counsel to assist trial counsel to be, *per se*, unreasonable; nor is the rate charged for Mr. Lang's time—substantially below what I would consider the prevailing market rate in this community—unreasonable. Whether particular expenditures of time were reasonable in the circumstances here will be considered below.

Marathon also argues that the expenses being claimed in behalf of the plaintiff's experts in some of the matters discussed below are not compensable. Marathon claims that the wording of the particular orders involved was such as to preclude the awarding of such fees. My orders authorizing the plaintiff to take or retake depositions or to engage in other discovery "at Marathon's expense" were not intended to necessarily include or preclude the awarding of expenses incurred in the hiring of personnel by the plaintiff to assist in that

---

1. I note that the order in question was three pages in length (filing 329). The computer printout contains two entries for "11/14/84" attributed to "CWM," each documenting eight billable hours to "review order of magistrate."

discovery. Rather, it was my expectation that, should counsel be unable to agree on a sum to be awarded, that matter would be submitted to me, as it has been, and that I would engage in the appropriate inquiry to determine the necessity of such persons' involvement, and the reasonableness of the expenses so incurred, with the purpose of placing the plaintiff back in the position it would have been in, at least in theory, had the sanction not been required. The particular requests in this regard are considered below.

## A

### KAPLAN DEPOSITIONS

On March 30, 1984 the undersigned granted Marathon leave to name, out of time, an expert witness in the field of geochemistry carbon isotope ratios and the isotopic identification of gas, and directed Marathon to make such expert available for deposition at Marathon's expense. (*See* filing 207.) The deposition of that expert, Dr. Kaplan, was scheduled for June 12, 1984 in Denver. At the commencement of the deposition Mr. Pfeiffer for Marathon informed Mr. Ware, attorney for KN, that, although Marathon had provided the substance of Dr. Kaplan's expected testimony, his technical report and results were not yet completed, that KN proceeded at its own risk, and that Marathon would not voluntarily reproduce Dr. Kaplan for further deposition testimony. KN thereafter moved to strike Dr. Kaplan's expert testimony, which motion I denied, but gave KN leave to redepose Dr. Kaplan, again at Marathon's expense (*see* Memorandum and Order July 24, 1984, filing 280). For these two depositions, KN claims the following amounts:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—John Holstead | 3.00 | $185.00 | $ 555.00 |
| B—B. Ware | 68.50 | 125.00 | 8,562.50 |
| C—Eugene A. Lang, Jr. | 20.00 | 34.73 | 694.60 |
| Dennis Coleman (geochemist) professional services and expenses | | | 27,738.64 |
| Statistician | | | 16,142.91 |
| James Weber (KN Reservoir Engineer) | 24.00 | 23.73 | 569.52 |
| Total | | | $54,263.17 |

I believe it would be unreasonable to award as expenses the more than $44,-000.00 in experts' expenses and fees in this discovery matter. First, there is insufficient documentation regarding any of these services to permit an objective evaluation of their necessity or reasonableness under the circumstances here. Second, even though the Kaplan depositions may have been critical in the plaintiff's preparation for trial, the objective of reducing prejudice to KN from Marathon's late naming of Dr. Kaplan is sufficiently served by imposing only attorneys fees and expenses in this instance.

Regarding the time spent on this matter by the three attorneys, I do not find adequate documentation to award fees regarding Mr. Lang's claimed involvement. Therefore, I make the following award:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—John Holstead | 3.00 | $125.00 | $ 375.00 |
| B—B. Ware | 68.50 | 75.00 | 5,137.50 |
| C—Eugene A. Lang, Jr. | -0- | n/a | -0- |
| D—Dennis Coleman, statistician, James Weber | | | -0- |
| Total | | | $ 5,512.50 |

## B

### SSI DEPOSITIONS

On April 10, 1984, when trial of this matter was scheduled to commence April 30, 1984, a pretrial conference was held with counsel. During the conference counsel for the plaintiff stated that the defendant Marathon had only recently provided an update of the report from Scientific Software Intercomp, and requested that the exhibit, number 1302, and all charts and graphs relating to it, be stricken. That request was denied, but plaintiff was given leave to conduct discovery on the new report, such discovery to be completed by July 30, 1984. At the same conference, the trial setting was continued until August 20, 1984. (*See* Memorandum and Order of April 12, 1984, filing 221). Following the plaintiff's application for leave to depose particular individuals, and engage in other discovery resulting from the listing of this exhibit, I granted such leave to depose six

individual employees of SSI, and required Marathon to "reimburse plaintiff for the reasonable and additional costs of preparing for and conducting these additional depositions, including attorneys fees." (*See* Order of May 31, 1984, filing 257). Four of the six individuals were deposed, between June 25 and June 29, 1984. The expenses claimed by the plaintiff with respect to these four depositions are as follows:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| Attorneys | | | |
| A—John B. Holstead | 92.75 | $185.00 | $17,158.75 |
| B—Eugene A. Lang, Jr. | 67.00 | 34.73 | 2,326.91 |
| Subtotal | | | 19,485.66 |
| Paralegals | | | |
| A—B. Applegate | 10.00 | 40.00 | 400.00 |
| B—D. Smith | 2.00 | 40.00 | 80.00 |
| C—J. Wyley | 11.00 | 55.00 | 605.00 |
| D—A. Evans | 15.00 | 13.33 | 199.95 |
| Subtotal | | | 1,284.95 |
| Others | | | |
| A—John D. Haun (geologist) | 45.00 | $125.00 | $ 5,625.00 |
| B—John M. Parker (geologist) | 92.25 | 65.00 | 5,996.25 |
| C—Craig W. Van Kirk (reservoir engineer) | 427.50 | 100.00 | 42,750.00 |
| D—James Weber (reservoir engineer) | 57.00 | 23.83 | 1,358.31 |
| Subtotal | | | 55,729.56 |
| Expenses | | | |
| Deposition transcript fees | | | 1,938.00 |
| Photocopy expenses | | | 201.00 |
| Telephone expenses | | | 102.57 |
| Travel expenses | | | 1,822.00 |
| Subtotal | | | 4,063.57 |
| Total | | | $80,563.74 |

The two SSI reports are quite voluminous and involve technical geological studies regarding the central factual issues in this case. Their importance in the litigation, to both sides, cannot be overstated. Likewise, the scientific data and technical descriptions and explanations in them would be impossible to fully comprehend without the assistance of persons trained in geologic study. Such assistance would be essential in determining and analyzing the differences between the 1983 SSI report and the 1984 SSI report. Moreover, although asked in interrogatories by the plaintiff to specifically set forth the differences between the 1983 and 1984 SSI re-

ports, Marathon did not do so in a manner which would permit KN's counsel to protect their client's interest without engaging experts to conduct a detailed comparison of the two reports. I find this course of action to have been reasonable under the circumstances. For this reason, I do not reject the proposal of awarding KN some amount for payment of its experts, whose time was made necessary by the additional report.

That is not to say, however, that the sum of $55,729.56, the amount claimed for experts' services with respect to the SSI depositions, is reasonable even under these circumstances. Two geologists and two reservoir engineers were utilized in analyzing the 1984 report and comparing it to the 1983 report, in preparation of KN's attorneys for deposing the four SSI personnel. No explanation is provided as to why two geologists and two reservoir engineers were necessary; what activities were performed by each; what makes the various rates proposed, which range from $23.80 per hour to $125.00 per hour, reasonable; nor why the number of hours charged was reasonable. I am left, therefore, to my own notions about what amount might be fair and reasonable in this regard; I conclude, upon consideration of the materials submitted, that the sum of $6,000.00 would not exceed the bounds of reason in this instance (representing one hundred twenty hours at $50.00 per hour).

Because of the importance of the SSI reports, I do not fault plaintiff's counsel for the utilization of lead counsel in this instance. I do find, however, that the number of hours claimed are excessive, and reduce them accordingly. I do not find Mr. Lang's participation in the SSI depositions to have been unreasonable, nor the rate charged to have been excessive. I do, however, reduce the compensable hours in accordance with the plaintiff's initial request to the defendant for his services. (See Exhibit E to filing 407).

I find the involvement of paralegals in this aspect of this discovery matter to have been reasonable, the hours expended to

have been reasonable, and the rates charged per paralegal hour to have been somewhat excessive. Therefore, these awards are reduced accordingly.

Although plaintiff requests a substantial amount for travel expenses incurred by Mr. Holstead in this instance, no documentation is provided. I have computed the travel expense, which was obviously necessary, as follows: two round trip coach air fares to Denver from Houston, $460.00, plus per diem (at the then government per diem rate of $75.00) for seven days = $985.00.

In accordance with the foregoing I make the following award with respect to the SSI depositions:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| **Attorneys** | | | |
| A—John B. Holstead | 65.00 | $125.00 | $ 8,125.00 |
| B—Eugene A. Lang | 47.00 | 34.73 | 1,632.31 |
| Subtotal | | | 9,757.31 |
| **Paralegals** | | | |
| A—B. Applegate | 10.00 | $ 30.00 | $ 300.00 |
| B—D. Smith | 2.00 | 30.00 | 60.00 |
| C—J. Wiley | 11.00 | 30.00 | 330.00 |
| D—A. Evans | 15.00 | 13.33 | 199.95 |
| Subtotal | | | 889.95 |
| Expert consultation expenses | | | 6,000.00 |
| Deposition transcript fees | | | 1,938.00 |
| Photocopy expenses | | | –0– |
| Telephone expenses | | | –0– |
| Travel expenses | | | 985.00 |
| Total | | | $19,570.26 |

### C
### KALER AND JACOBY DEPOSITIONS

By a memorandum and order in July 1984, I permitted the plaintiff to take the depositions of Howard Kaler and Raymond Jacoby, at Marathon's expense. (See filing 280). The expenses of these depositions are claimed to be $1,434.37, documented by the affidavit of Eugene A. Lang, Jr. The defendant has agreed that the amount claimed is reasonable, and I so find. Therefore, KN will be awarded $1,434.37 in reference to these depositions.

### D
### KN'S MOTIONS FOR SANCTIONS

On January 2, 1985 I entered an order granting in part the plaintiff's motion for sanctions against Marathon, for its failure, despite having been ordered to do so, to produce materials generally classified as the "Motsch/Quattlebaum materials." In doing so I ordered Marathon to pay the plaintiff's expenses, including a reasonable attorneys fee, in bringing that matter to the court. (See filing 368.) In this matter plaintiff seeks the following reimbursement:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—J. Holstead | 52.00 | $185.00 | $ 9,620.00 |
| B—P. Nicholson | .50 | 85.00 | 42.50 |
| C—R. Page | 26.00 | 85.00 | 2,210.00 |
| D—Eugene A. Lang, Jr. | 20.00 | 34.73 | 694.60 |
| Total | | | $12,567.10 |

I cannot conclude that the issues presented in the motion for sanctions were so complex as to require the personal attention of lead counsel for the plaintiff. I therefore shall not award compensation at the "lead counsel" rate. I also find the hours spent in preparing either the motion or the briefs in support of the plaintiff's position thereon to be slightly excessive. I note, however, that all but two of the hours claimed for attorneys Page and Lang, and six of the hours claimed by Mr. Holstead, related not to this motion, but to Marathon's motion "with respect to pending discovery matters," filing 355, for which an award of expenses and fees was not made. That time will be excluded, as will the time claimed for attorney Nicholson in preparing the certificate of conference for the motion. Accordingly, the following award is made:

| Individual | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| A—J. Holstead | 38.00 | $ 75.00 | $ 2,850.00 |
| B—A. Lang | 2.00 | 34.73 | 69.46 |
| C—P. Nicholson | | | –0– |
| D—R. Page | | | –0– |
| Total | | | $ 2,919.46 |

In accordance with the foregoing discussion,

IT THEREFORE HEREBY IS ORDERED:

1. The parties' applications for fees and expenses, filings 335, 401, and 384 are

granted in part, in accordance with this memorandum.

2. Defendant Marathon's request for discovery on the attorney fee applications is denied.