Anthony FOX et al., Appellants,

v.

STUDEBAKER–WORTHINGTON,
INC., et al., Appellees.

No. 74–1286.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1974.

Decided May 30, 1975.

James P. Larkin, Minneapolis, Minn., for appellants.

James H. O'Hagan, Minneapolis, Minn., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and MEREDITH,[*] Chief District Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

Plaintiffs Anthony Fox, Marcella Fox and George Hean appeal the dismissal of their complaint pursuant to Fed.R.Civ.P. Rule 37(d) for violations of the federal rules of discovery and the imposition of sanctions pursuant to Fed.R.Civ.P. Rule 37(b)(2)(A) establishing as true certain portions of defendants' counterclaim. We affirm as to the dismissal of plaintiffs' complaint but reverse on the matter of the counterclaim.

On December 12, 1969, the parties entered into an agreement (Stock Purchase Agreement) whereby Gravely Corporation, a wholly owned subsidiary of defendant Studebaker-Worthington, Inc., and a predecessor in interest of defendant Clarke-Gravely Corporation, purchased a snowmobile manufacturing operation, Couparral, from Anthony Fox, his wife Marcella Fox, and George Hean, a business associate. Part of the original purchase price pursuant to the Stock

---

[*] The Honorable James H. Meredith, Chief Judge, Eastern District of Missouri, sitting by designation.

Purchase Agreement was to be paid to plaintiffs out of future profits of the business under defendants' management. Whether it was Couparral's insolvency from the beginning or defendants' mismanagement, the business showed no profit after defendants took over. Since there were no "future profits" and the full purchase price was not forthcoming, the plaintiffs sued for $10,000,000 in damages alleging mismanagement of the acquired company. Alleging fraud, defendants counterclaimed for return of $300,000 initially paid to plaintiffs as part of the purchase price for the business. Defendants sought additional damages for alleged violations of Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)); violations of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q; and violations of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*. Fraud and misrepresentation by plaintiffs in the sale of Couparral are the basis of these allegations.

Prior to the date set for trial the parties engaged in discovery pursuant to the federal rules. Depositions were taken and interrogatories were submitted. Defendants' Set I Interrogatories were served on December 20, 1971, and answered by Anthony Fox and George Hean April 12, 1972. Defendants' Set II Interrogatories were served May 8, 1972, and answered by Anthony Fox July 10, 1972. In addition, supplemental answers to Set I Interrogatories were made by Anthony Fox in August of 1972.[1] In depositions given by Anthony Fox he admitted engaging in certain electrical surveillance or "bugging" of defendants' offices. Said "bugging" included listening to and recording of conversations be-tween defendants' officers and a variety of people including defendants' trial counsel. During the depositions Fox initially maintained that all recorded tapes of these conversations had been destroyed. This allegation was apparently made after his attorney advised Fox that such evidence would have to be produced during discovery. Fox subsequently changed his position and maintained that some of the tapes were still in his possession. In still a later deposition, Fox completely changed his story and said that no "bugging" had ever taken place, that his earlier stories were "fabrications borne out of frustration at being unable to acquire any information . . . [about] his former company," and that no tapes ever existed.[2]

In response to plaintiffs' flagrant violations of the rules of discovery, the defendants moved for an order of dismissal, pursuant to Fed.R.Civ.P. 37(d), of plaintiffs' complaint. No Rule 37(a) order compelling plaintiffs to completely answer the interrogatories was sought by defendants. Describing the plaintiffs' conduct as "a shocking abuse of the Federal Rules of Civil Procedure governing the discovery process," the trial court on October 31, 1972, granted defendants' motion and dismissed plaintiffs' complaint. Although plaintiffs Marcella Fox and George Hean did not participate in the "bugging" incidents, the dismissal was against all plaintiffs.

The dismissal of plaintiffs' complaint left only the defendants' counterclaim for adjudication. Based on plaintiffs' conduct before and after the October 31st dismissal, the defendants again moved the district court for Rule 37 sanctions with respect to the counterclaims. On May 3, 1973, pursuant to Rules 37(d) and 37(b)(2)(A), defendants' motion was granted establishing as true

1. It appears that Marcella Fox did not sign either of two sets of interrogatories answered and George Hean signed only the first set. Both did, however, submit answers and supplemental responses to defendants' interrogatories, but not until March 20, 1973, long after their complaint had been dismissed.

2. Anthony Fox was criminally prosecuted and found guilty of attempted wire-tapping in con-nection with his bugging activities in this case. United States v. Fox, No. 373 Cr. 86 (D.Minn. 1973). Plaintiffs argue that since he was only found guilty of *attempted* wire-tapping the trial court could not have found that Fox's efforts were successful. Such contention lacks merit.

allegations of certain paragraphs of the counterclaim.

Thereafter on October 26 and October 31, 1973, the court heard testimony regarding the extent of damages on the counterclaim. In accord with the factual allegations established in the counterclaim, the court held that defendants were entitled to recover damages for plaintiffs' misrepresentations.

Finding that Couparral stock had no value and that the purchase price was $600,000,[3] the court concluded that the $600,000 purchase price was recoverable. An additional $718,433.75 was awarded defendants as the amount the Couparral balance sheet, incorporated into the Stock Purchase Agreement, understated the company's liabilities. Thus a total $1,318,433.75 was awarded defendants on their counterclaim.

On appeal plaintiffs contend:

I. The court abused its discretion in dismissing plaintiffs' complaint as to Mr. Hean and Mrs. Fox.

II. The court abused its discretion in imposing Federal Rule of Civil Procedure 37(b)(2)(A) deeming admitted certain allegations of defendants' counterclaim.

III. The failure to prove due care, reliance and value of securities at time of purchase bars recovery in both federal statutory and common law security fraud actions.

I.

THE DISMISSAL OF PLAINTIFFS' COMPLAINT.

■ No complaint is made with respect to the dismissal of plaintiffs' complaint as to Anthony Fox. The court in its order dismissing the complaint states "it was conceded on argument of the motion that dismissal as to Anthony Fox was an appropriate sanction." In any event, the record clearly reflects that the court did not abuse its discretion in dismissing the complaint as to Mr. Fox.

Marcella Fox and George Hean contend that since they did not participate in unlawful "bugging" activities and their failure to answer interrogatories was merely inadvertent and untimely, the dismissal was improper as to them. The trial court based the dismissal as to them on (1) their "privity" to information Anthony Fox illegally obtained, and (2) their failure to answer defendants' interrogatories.

In support of the dismissal of the complaint as to all plaintiffs, the court found and determined:

Their cause of action must be dismissed because in the preparation of the case, as co-plaintiffs, they must necessarily have discussed its facts with Anthony Fox. Both Marcella Fox and George Hean testified at the hearing on this motion that they were not aware of the "bugging" activities of their co-plaintiff Anthony Fox and that they obtained no information from Anthony Fox derived by him from the "bugging." This testimony appears to be inherently implausible. No claim has been made that Hean and Marcella Fox never discussed the case with Anthony Fox. If Hean and Marcella Fox were unaware of the fact or scope of Anthony Fox's "bugging" activities, then they cannot now positively testify they are in possession of no information obtained by him through those activities.

Beside the taint of unlawful "bugging" with which Hean and Marcella Fox may be affected, these two plaintiffs are also guilty of failure to answer defendants' interrogatories. Further, it is apparent that were Hean and Marcella Fox to prosecute their claims, it would be imperative that Anthony Fox, admittedly possessed of illegally obtained evidence, be called to testify.

**3.** Defendants paid $300,000 in cash to plaintiffs. However, the amount paid for the assets of Couparral also included the conversion of Convertible Promissory Notes of Couparral to-

taling $300,000 into 270 shares of Couparral's stock which proved worthless. Thus $600,000 was actually paid by defendants for the acquisition.

The sanctions available to a trial judge under Fed.R.Civ.P. are discretionary and the imposition of such sanctions will not be reversed unless there has been an abuse of discretion. General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1211 (8th Cir. 1973); 4A Moore's Federal Practice ¶ 37.08 at 37–112–13 (2d ed. 1974). Where, however, the drastic sanctions of dismissal or default are imposed, the range of discretion is more narrow and the losing party's non-compliance must be due to wilfulness, fault or bad faith. Societe Internationale v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); General Dynamics Corp. v. Selb Manufacturing Co., supra. A direct order by the court as provided in Rule 37(a) and (b) is not a prerequisite to imposition of sanctions under Rule 37(d). The rule permits immediate sanctions against parties for wilful failure to comply with discovery rules. Robison v. Transamerica Ins. Co., 368 F.2d 37, 39 (10th Cir. 1966); 2A Barron & Holtzoff, Federal Practice and Procedure, § 851 (Wright ed. 1961). Wilful failure to answer interrogatories may be the basis for a dismissal. General Dynamics Corp. v. Selb Manufacturing Co., supra; Mangano v. American Radiator and Standard Sanitary Corp., 438 F.2d 1187, 1188 (3d Cir. 1971). Where interrogatories are filed late out of neglect or health reasons, dismissal or a default judgment is too harsh a sanction. See Vac-Air, Inc. v. John Mohr & Sons, Inc., 471 F.2d 231 (7th Cir. 1973). Whether or not Marcella Fox's and George Hean's failure to timely answer various interrogatories was wilful or in bad faith, we are satisfied from our review of the record that the conduct of Anthony Fox heretofore described constituted the "fault," "wilfulness," or "bad faith" required under Societe Internationale, supra, to justify dismissal of plaintiffs' complaint. The nature of the evidence necessary to proceed with plaintiffs' complaint is such that the trial court could not be assured that it was not the fruit of Anthony Fox's illegal activity. Much of plaintiffs' evidence would be potentially inadmissible under 18 U.S.C. § 2515 which provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter.

As a party to and principal negotiator of the Stock Purchase Agreement Anthony Fox would be a necessary witness in plaintiffs' case. Such testimony would be inadmissible under § 2515 since it may have been obtained, at least in part, from illegal wire-tapping. Furthermore, statements by Marcella Fox and George Hean that they were not privy to illegally obtained information were found by the court to be "inherently implausible." Credibility of witnesses is for the trier of fact to determine. To require defendants to defend themselves against plaintiffs' complaint under such circumstances would be extremely prejudicial to defendants.

The court's findings upon which the dismissal of the complaint is based are supported by substantial evidence. The court's decision is not induced by any erroneous view of the applicable law. A careful examination of the record satisfies us that the court did not abuse its discretion in dismissing the complaint as to all plaintiffs.

## II.

### SANCTIONS AGAINST PLAINTIFFS ON DEFENDANTS' COUNTERCLAIM.

On May 3, 1973, the trial court granted defendants' Federal Rule of Civil Procedure 37(b)(2)(A) and (d) motion to deem admitted allegations set forth in paragraphs 31, 32, 34, 35, 38, 40 and 44 of defendants' counterclaim which alleged essential elements of plaintiffs' liability on the counterclaim. The trial court in its memorandum decision of January 18, 1974, described the scope of the established admissions as follows:

Briefly stated, the established paragraphs of defendants' counterclaim, as well as the evidence adduced at trial,

make clear that plaintiffs misrepresented the status of the reputations of Fox and the business, that such misrepresentations were made with the intent to deceive defendants, and that defendants relied upon them. Plaintiffs also misrepresented the condition of the distribution network for snowmobiles. As a result of the misrepresentations and believing them, Gravely entered the agreement. While reliance upon the representations regarding the distribution network has not been specifically alleged in the established paragraphs of the counterclaim, the portion of paragraph 44 stating that Gravely would not have entered the agreement had it known of the alleged frauds establishes the element of reliance. It is clear to this Court that plaintiffs have violated Rule 10b–5 and §§ 12(2) and 17(a) of the Securities Act of 1933. In addition, the proof of the defendants' case establishes as well the requisites of a fraud action in Minnesota.

The trial court based its granting of the motion on plaintiffs' conduct prior to the dismissal of plaintiffs' complaint, as set out in Division I, and conduct subsequent to that date. The latter conduct is described by the district court as follows:

> Since that Order plaintiffs failed to answer interrogatories, and did not produce certain documents and records, despite their promises so to do. On December 4, 1972, defendants' attorneys wrote to plaintiffs advising them that the interrogatories still required answers. Approximately three weeks later defendants' attorneys contacted James Larkin, plaintiffs' attorney, by phone, and again requested answers to interrogatories. Larkin asked that defendants' attorneys wait until January 15, 1973, before bringing motions with respect to the interrogatories. No answers were forthcoming on that date. Defendants' attorneys wrote plaintiffs two more times seeking the interrogatory answers. After plaintiffs' attorney was informed that defendants were bringing this motion,

defendants were served with one and one-half pages of interrogatory answers that defendants contend are inadequate. As to the production of documents requested by defendants, plaintiffs have been both dilatory and obstructive. Plaintiff Anthony Fox admitted on his deposition that he has destroyed some of the requested documents. Plaintiffs have admitted possession of a large variety of documents and records, but have failed to produce those documents and records, including accounting records, notes of negotiations conducted with defendants, duplicate business records kept at the home of Fox, reports from private investigators, and photographs. Fox has admitted possessing documents stolen from defendants since the commencement of this action.

\* \* \* \* \* \*

> The conduct of plaintiffs, particularly Anthony Fox, manifests a cavalier disregard for the carefully constructed system provided by the Federal Rules of Civil Procedure for just resolution of disputes. . . . The conduct of plaintiffs has necessarily required defendants' counsel to waste time and effort and has blunted defendants' attempts to prepare this case for trial.

Prior to entry of the May 3, 1973, order all of the plaintiffs had submitted answers to interrogatories; at least many of the requested exhibits had been produced, and extensive depositions had been taken. There had at least been a substantial compliance with the discovery demands. Prior to the filing of the motion to establish as true the specified allegations, the defendants had not applied for a Rule 37(a) order to compel discovery or sought such order. Such application and order would have disclosed the precise information which the plaintiffs were required to produce.

Fed.R.Civ.P. Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It has no application if there has not been a court order. 8 Wright & Miller, Federal Practice Procedure § 2289, at 790 (1970).

However, many of the sanctions available under Rule 37(b) are incorporated by reference in Rule 37(d). Specifically in question here is Rule 37(b)(2)(A) which allows the court to "order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." The provisions of Rule 37(d) with regard to interrogatories do not apply when the failure to comply is anything less than a total failure to respond. 8 Wright & Miller, Civil Practice and Procedure § 2291, at 809 (1970); 4A Moore's Federal Practice ¶ 37.05, at 37–103, 106 (2d ed. 1974). If a response is made, but some questions not answered or are evasive or incomplete, a motion under Rule 37(a) to compel answers is the proper remedy. *Id.* *See* GFI Industries v. Fry, 476 F.2d 1, 3 (5th Cir. 1973). Similarly, a Rule 37(d) sanction is improper where a written response to a request to inspect documents is made but is not satisfactory. 8 Wright & Miller at 810. Similar rules apply to discovery by deposition. *See* First Nat'l Bank of Washington v. Langley-Howard, Inc., 391 F.2d 207, 208 (3d Cir. 1968). In other words, Rule 37(d) sanctions are proper only where there has been a complete or nearly total failure of discovery. *See* Notes of Advisory Committee on Rules, Rule 37, 28 U.S. C.A. (1975 Supp.) p. 53. Such is not the case here. Interrogatories were served on plaintiffs December 20, 1971, and May 8, 1972. Answers, signed by Anthony Fox and George Hean, to the December 20 interrogatories were served on defendants April 12, 1972. On July 10, 1972, Anthony Fox responded to the May 8 interrogatories. Supplemental answers, as requested, to the initial set of interrogatories were served by Anthony Fox on August 2, 1972. Marcella Fox and Hean submitted answers to the interrogatories they had previously failed to sign answers to on March 20, 1973. These answers were all late under Rule 33(a). However, no Rule 37(a) motion to compel answers was made by the defendants. On February 13, 1973, defend-

ants moved pursuant to Rule 34 for production, inspection and copying of certain documents. Because these were allegedly incomplete, the defendants requested and received additional documents March 28, 1973. Again, no Rule 37(a) order was sought or obtained. Deposition of Anthony Fox was taken as scheduled on July 6–7, 1972, March 13, 1973, and February 8, 1974. With the exception of the last deposition and the supplying of additional documents, all of the above described discovery activity occurred prior to March 22, 1973, the date on which defendants moved for sanctions pursuant to Rule 37(b)(2)(A) and (d).

■ As we have said, *supra*, Rule 37(b) sanctions are not applicable absent a Rule 37(a) order, and Rule 37(d) sanctions only apply where there is a total non-compliance with discovery. *See* Notes of Advisory Committee on Rules, Rule 37, 28 U.S.C.A. (1975 Supp.) p. 53. The requisite "total non-compliance" is lacking in this case. There was at least an attempted compliance by plaintiffs of all forms of discovery. Our review of the interrogatories and depositions indicates a substantial compliance. Although not timely submitted, defendants had the benefit of answers to their interrogatories prior to the time they filed their Rule 37(b)(2)(A) and (d) motion. Thus, the imposition of Rule 37(d) sanctions was improper. Defendants' remedy for incomplete or otherwise objectionable answers to interrogatories, and for failure to produce the correct documents pursuant to a Rule 34 request was to file a motion under Rule 37(a) for an order requiring plaintiffs to answer and to produce documents for evidence. GFI Industries v. Fry, 476 F.2d 1, 3 (5th Cir. 1973). *See* Vac-Air, Inc. v. John Mohr & Sons, Inc., 471 F.2d 231, 234 (7th Cir. 1973).

The remedy granted by the trial court, coming on top of the dismissal of plaintiffs' case, is a very harsh remedy. This is particularly true as to Mrs. Fox and Mr. Hean as it seems clear the trial court reached its decision largely upon the basis of the atrocious conduct of Mr.

Fox. There is no substantial evidence in the record that either Mrs. Fox or Mr. Hean materially participated in Mr. Fox's conduct. There is a strong policy favoring a trial on the merits and against depriving a party of his day in court. Gill v. Stolow, 240 F.2d 669, 670 (2d Cir. 1957). *See* Vac-Air, Inc. v. John Mohr & Sons, Inc., *supra.* It has not been adequately established that plaintiffs' conduct would deprive defendants of a fair trial on their counterclaim. Studebaker-Worthington is a large well-established corporation whose officers and staff are experienced and competent to handle business transactions. Plaintiffs' conduct has in no way hindered defendants' negotiators from testifying as to any false representations made to them, the materiality of such representations and their reliance thereon. Defendants' representatives had full access to plaintiffs' business and business records for at least a month before they entered into the purchase agreement. Various investigations were made. Defendants were aware of the fact that the corporation they were purchasing was in deep financial trouble and that its balance sheet was not accurate. Moreover, much evidence was obtained through the discovery proceeding. We are not persuaded that the failure to make a full disclosure in the discovery proceedings would deprive defendants of a fair opportunity to establish their counterclaim. The defendants have failed to point out what specific evidence was not obtained in their disclosure proceedings or how the absence of such evidence would impair their ability to establish their case.

If during the course of the trial plaintiffs attempt to use any of the evidence alleged to have been obtained as a result of illegal wire tapping or the fruit of such illegal action, the court can exclude such evidence. Moreover, if it is demonstrated at the trial that plaintiffs continue to refuse without adequate excuse to provide evidence they are ordered to produce, the court can then take such action as it deems appropriate. *See* Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909).

We hold that under the facts and circumstances of this case as disclosed by the record the court abused its discretion in imposing the harsh sanction of establishing as true specific paragraphs of the counterclaim. The effect of such action was to establish liability and leave open only the issue of damages.

## III.

Since reversal and remand for a new trial is required on defendants' counterclaim and the evidence at the new trial may be significantly different, we do not reach the remaining issues raised by the plaintiffs.

The order dismissing plaintiffs' complaint is affirmed as to all of the plaintiffs. The judgment for defendants based on admissions established by the court with respect to defendants' counterclaim is reversed and the counterclaim is remanded to the trial court for a new trial.