**REESE CORPORATION,**
**Plaintiff/Appellant,**

v.

**Richard D. RIEGER, Defendant/Appellee.**

**Civil Action No. 95–40398.**
**Bankruptcy No. 94–45395.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 11, 1996.

Paul A. Sarnacki, Birmingham, MI, for Richard D. Rieger.

Daniel M. Clark, Detroit, MI, for Reese Corp.

Jefferson Joseph Burgess, Milan, MI, pro se.

*MEMORANDUM OPINION AND ORDER GRANTING APPELLANT'S REQUEST FOR AN ORDER REVERSING THE BANKRUPTCY COURT'S DISMISSAL OF ITS SEPTEMBER 7, 1994 ADVERSARY PROCEEDING FOR FAILURE TO COOPERATE WITH DISCOVERY*

GADOLA, District Judge.

This matter comes before this court on appeal from the Bankruptcy Court for the

Eastern District of Michigan pursuant to 28 U.S.C. § 158(a), Federal Rule of Bankruptcy Procedure 8001(a) and Local Rule 150.1(d) (E.D.Mich. Jan. 1, 1992). On April 13, 1995, the Bankruptcy Court, Honorable Ray Reynolds Graves presiding, entered an order dismissing the plaintiff's adversarial complaint against the defendant based upon the plaintiff's failure to provide discovery and cooperate in the preparation of the Joint Final Pretrial Order. On October 23, 1995, Judge Graves entered an order denying the plaintiff's motion for reconsideration of the April 13, 1995 order. The plaintiff, Reese Corporation brings this appeal, requesting this court to reverse the Bankruptcy Court's April 13, 1995 order on the ground that dismissal of its adversary proceeding for the alleged discovery violations constituted an abuse of discretion under Federal Rule of Civil Procedure 37(b).

## I. Factual Background

To clarify the issues raised in this appeal, a complete explication of the history of this action is warranted. Richard Rieger ("Rieger") and Reese Corporation ("Reese") entered into a sales representative agreement on April 4, 1985 pursuant to which Rieger was to serve as an exclusive sales agent for Reese for its diamond and engagement merchandise sets in Michigan, Ohio, Indiana and Pennsylvania. Rieger was responsible for selling the merchandise to independent jewelry stores and would receive an 8% commission on all gross sales in his territory. Rieger received his commissions in advance against the annual sum of $36,000 and was required by the contract to repay any excess advances on or before March 31 of the following year. The contract would continue in full force for a period of one year after April 15, 1985 and for successive periods of one year unless terminated by either party.

Asserting claims for breach of the exclusive agency provisions of the contract, Reese filed suit against Rieger in Florida in 1990. Reese alleged that Rieger breached the contract during 1987, the third year of his employment, by carrying a competitor's merchandise line. The matter was referred to arbitration and Reese ultimately secured a judgment against Rieger on October 31, 1991 in the amount of $38,550.48 plus interest and costs totalling nearly $1,250.

Seeking to enforce the Florida award in Michigan, Reese filed the judgment with the Circuit Court for the County of Oakland on February 9, 1994. On May 24, 1994, Reese's collection efforts were thwarted by Rieger's filing of a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (Bankruptcy Case No. 94–45395). At the time of the filing of his petition, Rieger's debt (i.e. the judgment plus 12% statutory annual interest) to Reese totaled approximately $50,684. Reese filed an adversary proceeding (94–4773) on September 7, 1994, challenging the dischargeability of this debt under 11 U.S.C. § 523(a)(2). Reese alleged that Rieger's acts in knowingly accepting commissions and concealing his contract breach constituted fraud within the meaning of section 523(a)(2) sufficient to justify an exception to the discharge of this debt. *See* 11 U.S.C. § 727(b).

Immediately after this adversary complaint was filed, the Bankruptcy Court issued a "Notice Setting Rule 7016 Pretrial Conference and Pretrial Order," scheduling the matter for a preliminary pretrial conference on October 18, 1994. That Notice required each party to file a statement indicating the most recent time that settlement discussions were conducted, setting the closing date for discovery on December 23, 1994, the final pretrial conference date for January 31, 1995, and the trial date for February 13, 1995. That Notice further required the parties to file a Joint Final Pretrial Order before the final pretrial conference. The Notice also contained the following admonition:

> Failure to appear at pretrial conferences and to comply with the requirements for preparing the Joint Final Pretrial Order subjects the non-complying party, his counsel, or both to possible sanctions.

In compliance with the Notice, counsel for Rieger filed a statement concerning settlement discussion and appeared for the sched-

uled preliminary pretrial conference on October 18, 1994. Counsel for Reese failed to submit a statement regarding settlement negotiations or to appear for the October 18, 1994 conference. Counsel for Reese also failed to provide any justification for his absence.

Attached to the Notice was another formal notice concerning the Joint Final Pretrial Order which listed the specific duties and obligations of the parties in preparing the adversary proceeding for trial. In pertinent part, this notice provided:

> Plaintiff's counsel shall confer with all parties to formulate a concise, proposed Joint Final Pretrial Order. Plaintiff's counsel will draft the proposed order, obtain the approval and signature of all parties' counsel or each unrepresented party, and submit the proposed order to the Court for approval and adoption.

That notice further provided that:

> Failure of counsel or an unrepresented party to cooperate in the preparation, the submission, or the strict compliance with the terms of the Final Pretrial Order may result in the dismissal of the claims, default judgment, refusal to permit witnesses to testify or to admit exhibits, assessment of costs and expenses, or other appropriate sanctions.

Counsel for Rieger alleges that he attempted to contact counsel for Reese on several occasions in an attempt to formulate a Joint Final Pretrial Order but that he received no cooperation in this regard. As a result, Rieger's counsel prepared and filed his own version of the Final Pretrial Order and Trial Brief. He served these documents on Reese's counsel on January 27, 1995.

Counsel for Rieger further submits that, on December 22, 1994, he served interrogatories and a request for production of documents on Reese's counsel. Although counsel for Reese denies ever having received these items, the proof of service contained in the record substantiates that the interrogatories and requests for production were served upon Reese's counsel by first class mail on that date. In these requests, Rieger sought copies of the employment agreement, commission statements, Rieger's personnel file, all evidence of Rieger's alleged fraud, an accounting of the sales made by Rieger during his three years of employment, any documents relating to his performance as a sales representative, and any other documents in support of Reese's claims of fraud.

On February 7, 1995, six days before trial was scheduled to commence, Rieger's counsel contacted Reese's counsel by letter formally requesting that Reese respond to the discovery requests and that Reese contribute in the preparation of the Joint Final Pretrial Statement. On February 8, 1995, Rieger's counsel filed a motion to compel answers to interrogatories, production of documents and for costs. Counsel for Reese admits that he received this motion and that he did not file a response. He insists, however, that he did not file a formal response to the motion to compel because the response was not due under the Bankruptcy Rules until February 25, 1995, twelve days after trial was scheduled to commence. Reese's counsel submits that he considered the motion to be a mere "litigation tactic to distract attention from the real issues at trial." He further submits that he did not answer the interrogatories because a copy was not attached to the motion to compel.

Ultimately, the trial date was adjourned to March 8, 1995. During discussions between counsel for the parties on February 14, 1995, Reese's counsel agreed to prepare a trial brief by March 6, 1995 and that date was incorporated into the court's notice of adjournment.

On February 22, 1995, counsel for Rieger filed a motion to dismiss Reese's adversarial complaint based on the aforementioned failures in compliance with the court rules. A hearing on the motion was conducted on March 8, 1995, before the commencement of the trial. At that hearing, counsel for Reese admitted that he had failed to comply with Rieger's discovery requests. Focussing on

the nature of the proceeding and the substantial prejudice to Rieger that resulted from Reese's failure to answer interrogatories, Judge Graves granted Rieger's motion to dismiss the adversarial complaint. Judge Graves reasoned:

> A lot of cases come into the bankruptcy process based upon the non-dischargeability or the allegation of a State Court Judgment, and quite often we are asked to take the State Court Judgment at face value and grant Summary Judgment in favor of the Judgment creditor against the Defendant–Debtor. . . . The appellate courts have said: "No, you can't do that because bankruptcy is fundamentally a different arena, a different set of circumstances, different issues are at play." It's one thing to allege fraud as part of a general allegation in terms of commercial litigation in a State Court, and it is fundamentally a different animal to come in with a Judgment and say: "This Judgment establishes fraud for purposes of non-dischargeability of a debt." And it is because we are dealing with fundamentally two different kinds of cases and two different kinds of fraud, I take the view that everything has got to be put on the table by way of the orderly process of discovery envisioned under the Federal Rules of Civil Procedure. And lawyers have a duty . . . to exchange information and make the case work so that I know what I have to deal with, and so if it is ever reviewed, people will know what was at issue here.
>
> We have a situation for want of whatever and I am not saying that anybody did anything bad, Mr. Sarnacki and his client are at a disadvantage, a prejudicial disadvantage in not knowing all of the things that they should know at this juncture as to what the Plaintiff's case is all about. It's not enough to say that it was a State Court Judgment and that it was tried in a State Court. Because when you bring the non-dischargeability action here, that's a new theory of law. You can say that it will grow out of the State Court record, but you have a duty to respond and say:

> "These are the things in the State Court record that I am going to rely on. These are the documents that I am going to rely on. These are the theories of law that I am going to rely on." And the way we get to the answer to those questions is by answering Interrogatories and by complying with Requests to Produce Documents.
>
> Now I am aware that there is no Order outstanding that Mr. Clark has not complied with, and it would be an easier case if there were an Order compelling these things to take place. But here we are at the eve of trial, which was adjourned once already, there's no dispute that the Interrogatories are outstanding and unanswered. There is no dispute that the Request for Production of Documents are outstanding and unanswered. That prejudicial disadvantage makes it fundamentally unfair to compel the Defendant–Debtor to go forward and defend the cause of action which has not been flushed out by the Plaintiff. The Motion to Dismiss is granted.

Transcript pg. 13, ln. 5 to pg. 16, ln. 23.

Immediately following the dismissal, Reese filed a motion for reconsideration which was heard on September 19, 1995. At that hearing Judge Graves inquired of Rieger's counsel as to whether lesser sanctions would have been appropriate. Concluding that they were not, Judge Graves denied Reese's motion for reconsideration. Reese timely filed this appeal on November 2, 1995.

In its brief on appeal, Reese claims that dismissal of its adversary complaint as a sanction for failure to cooperate in discovery constituted an abuse of discretion for several reasons. First, Reese contends that Judge Graves abused his discretion by dismissing the adversarial complaint when no order compelling discovery or answers to interrogatories had been entered. Second, Reese asserts that it was an abuse of discretion to dismiss the action without considering lesser sanctions. Third, Reese submits that Judge Graves abused his discretion by awarding sanctions against Reese instead of Reese's

counsel. Finally, Reese argues that dismissal constituted an abuse of discretion because Rieger's violations of local rules exacerbated Reese's failure to comply with discovery.

## II. Legal standard

 Federal Rule of Civil Procedure ("Rule") 37(b)(2) authorizes district courts to impose sanctions upon a party or his counsel for failure to comply with discovery, including "dismissing the action or proceeding or any part thereof." Fed.R.Civ.P. 37(b)(2)(C). Rule 37 is applicable in Bankruptcy proceedings by virtue of Federal Rule of Bankruptcy Procedure 7037. The Sixth Circuit has held that dismissal of an action or proceeding is "a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Regional Refuse Systems v. Inland Reclamation Co.,* 842 F.2d 150, 153–54 (6th Cir.1988); *Patton v. Aerojet Ordnance Co.,* 765 F.2d 604, 607 (6th Cir.1985); *see also Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958). Any dismissal for failure to comply with discovery under Rule 37(b), or Federal Rule of Bankruptcy Procedure 7037, is reviewed only for an abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); *Regional Refuse,* 842 F.2d at 154. For purposes of reviewing the dismissal of a proceeding under Rule 37, the Sixth Circuit has identified four factors to consider:

(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery;

(3) whether the dismissed party was warned that failure to cooperate would lead to dismissal; and

(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir.1995); *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1073 (6th Cir.1990). Consideration of these factors should be given with reference to the dual purposes underlying the use of dismissal as a sanction for willful noncompliance with discovery, namely, of punishing the offending party and deterring future litigants from engaging in similar misconduct. *Bass,* 71 F.3d at 241. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits is dismissal appropriate. *Meade v. Grubbs,* 841 F.2d 1512, 1520 n. 7 (10th Cir.1988).

## III. Analysis

 At the outset, this court rejects Reese's first argument that the trial court abused his discretion by dismissing the adversarial complaint when no order compelling discovery or answers to interrogatories had been entered. Rule 37(a) provides, in relevant part, that: "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery...." (emphasis added). As such, Rule 37(a) contemplates that before a sanction can be imposed, there must be an order compelling discovery. On the other hand, Rule 37(d) provides, in relevant part, that: "If a party ... fails ... to serve answers or objections to interrogatories ... the court in which the action is pending on motion may take any action authorized under subparagraph (A), (B), and (C) of subdivision (b)(2) of this rule." Rule 37(d) leaves no doubt that the court may impose sanctions, including dismissal, if the party fails to comply even without entry of an order compelling compliance.

It is well settled that "[a] direct order by the Court as provided in Rule 37(a) and (b) is not a prerequisite to imposition of sanctions under Rule 37(d)." *Sullivan v. Liberty Savings & Loan Association, Inc.,* 65 B.R. 578, 579 (Bankr.M.D.Fla.1986) (*quoting Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 993 (8th Cir.1975); *citing Sigliano v. Mendoza,* 642 F.2d 309 (9th Cir.1981)). *See also In re Special Service Delivery, Inc.,* 16 B.R.

714, 717 (Bankr.N.D.Ohio 1982) (holding that there is no requirement for a direct order to compel an appearance at a scheduled deposition as a prerequisite to the imposition of sanctions under Rule 37(d)). Similarly, the commentators have also recognized that "there must be an order under subdivision (a) before sanctions are imposed under (b), while under (d) the party aggrieved moves directly for the imposition of sanctions." 4A Moore's on Federal Practice ¶ 37.05 at 37–118 (2d ed. 1995). As such, it is clear that Reese's argument, that an order to compel discovery is a prerequisite to an imposition of sanctions, is without merit.

■ Reese's remaining arguments, that the trial court abused its discretion by 1) dismissing the action without considering lesser sanctions, 2) awarding sanctions against Reese instead of Reese's attorney and 3) dismissing the action despite Rieger's alleged violations of the Local Rules, require this court to invoke the *Bass* four factor analysis.

### 1. Whether Reese's failure to cooperate in discovery was due to willfulness, bad faith or fault.

The court in *Bass* stated that "a willful violation occurs whenever there is a *conscious and intentional* failure to comply with the court order[1]." *Bass*, 71 F.3d at 241. (emphasis added). The court went on to find that the record supported the trial court's determination that the dismissed party had intentionally failed to comply with discovery orders. *Id.* In the instant case, it is noteworthy that the trial court, who is in a superior position to make a determination regarding the parties' intent, made no specific finding of willfulness, bad faith, or fault. To the contrary, Judge Graves stated that: "I am not saying that anybody did anything bad." Transcript pg. 15, ln. 16.

Upon a review of the complete record on appeal, this court finds no basis upon which it

should question the trial court's finding. As such, this factor resolves in favor of Reese.

### 2. Whether Rieger was prejudiced by Reese's failure to cooperate in discovery.

Whether Rieger was prejudiced by Reese's failure to cooperate in discovery is not even contested by Reese. It is clear from the record that Rieger would be prejudiced by not obtaining various discovery from Reese and by not being able to conduct depositions of Reese's officer's in preparation for its defense against Reese's claim. As such, this factor favors Rieger.

### 3. Whether Reese was warned that failure to cooperated could lead to dismissal.

The third factor, whether Reese was warned that a failure to cooperate could lead to dismissal, is more problematic. It is clear that no order to compel discovery was pending at the time the case was dismissed by the trial court. Had there been an order to compel discovery pending, this factor, if not this entire appeal, would be much easier to resolve against Reese. In fact, the trial court noted as much when he stated: "[n]ow I am aware that there is no Order outstanding that Mr. Clark has not complied with, and it would be an easier case if there were an Order compelling these things to take place." Transcript, pg. 16, ln. 7–10.

Therefore, this court must look elsewhere in the record for evidence of whether Reese was sufficiently warned about the possibility of dismissal as a sanction. It is plain that Rieger's self-serving motion to dismiss cannot properly be considered a sufficient warning to Reese for purposes of this court's review. As such, there only remains the warnings of "sanctions" and "dismissal . . . or other appropriate sanctions" in the *notices* accompanying the Pretrial Order. Notably, the Sixth Circuit, in both *Cleveland* and

---

1. While a discovery order was pending in *Bass,* such an order is not a prerequisite for dismissal.

See discussion *supra.*

*Bass,* were presented with far more compelling circumstances in which to find that the dismissed party had been adequately warned that continued failure to cooperate in discovery would result in dismissal of the case.

For instance, in *Cleveland,* the Sixth Circuit found that the trial court's delay in ruling on the movant's motion for sanctions while it *issued an order compelling the nonmovant to comply with discovery,* was "sufficient to put [the nonmovants] on notice of the consequences of their failure to cooperate." *Cleveland,* 916 F.2d at 1079. Similarly, in *Bass,* the Sixth Circuit noted that the plaintiff was amply warned by the court where:

> [a]t the ... hearing on defendant's *third motion to compel and motion to dismiss,* the magistrate informed plaintiff's counsel ... that if he did not comply with the most recent *order,* ... the magistrate would recommend that the case be dismissed. Also in her *order and conditional report and recommendation, the magistrate specifically recommended that if plaintiff failed to comply with the order* ..., the case would be dismissed with prejudice as a sanction for failure to cooperate.

*Bass,* 71 F.3d at 242. (emphasis added).

In the instant case, the claimed warning was the two standard admonitions in the notices that pertained to the Joint Final Pretrial Order. It can not be said that these notices are as compelling a basis to find that Reese had been sufficiently warned about dismissal as were the warnings in *Cleveland* and *Bass.* At best, this factor is inconclusive in determining whether the trial court properly dismissed this case.

**4. Whether less drastic sanctions were imposed or considered before dismissal was ordered.**

Perhaps the most crucial part of this analysis is whether the trial court sufficiently considered less drastic sanctions before dismissing the case. This court is troubled by the trial court's cursory inquiry in this regard. Instead of an articulation on the rec-ord as to why lesser sanctions should be rejected, the trial court stated, in a rather conclusory manner, that "[t]he prejudicial disadvantage makes it fundamentally unfair to compel the Defendant debtor to go forward and defend the cause of action which has not been flushed (sic) out by the Plaintiff." Transcript pg. 16, ln. 18–21. Even more disconcerting was the trial court's "revisiting" of the issue of lesser sanctions at the hearing on Reese's Motion for Reconsideration. That examination consisted, in total, of the following brief exchange:

> THE COURT: Should there be a lesser sanction?
>
> MR. SARNACKI: No. Under the circumstances, Judge, because this matter was brought on the eve of trial, there was really no way for us to prepare and I don't think there was any other sanctions that would be appropriate in this case.
>
> THE COURT: You are correct. The Motion for Reconsideration is denied.

Transcript pg. 4, ln. 24—pg. 5, ln. 8. This casual approach to determining whether lesser sanctions would be appropriate is necessarily wanting. At no point in the record did the trial court articulate any reasons for rejecting lesser sanctions, let alone stating what those sanctions might be. Such lesser sanctions could have included, for instance: deeming the interrogatories established in Rieger's favor; precluding certain of Reese's claims; issuing an order to compel discovery and adjourning the trial until the order was obeyed; or issuing a contempt of court order against Reese's counsel.

For all of the above reasons, this court finds that the aggravating factors in this case do not outweigh the judicial system's strong predisposition to resolve cases on the merits. This court finds that the trial court's dismissal order was an inappropriate final sanction.

**Conclusion**

To conclude, the Appeal is **GRANTED;** the Bankruptcy Court's orders dismissing adversary proceedings and denying reconsid-

eration are **REVERSED;** and the cause is **REMANDED** to the Bankruptcy Court for the consideration of an alternative sanction.

**SO ORDERED.**